901 So.2d 590 (2005)
STATE of Louisiana
v.
Byron JOSEPH.
No. 04-KA-1240.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
Rehearing Denied May 27, 2005.
*592 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
*593 James A. Williams, Butch Wilson, James A. Williams Law Firm, Gretna, Louisiana, for Defendant/Appellant.
Byron Joseph, Angola, Louisiana, In Proper Person.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On April 23, 2003, the Jefferson Parish District Attorney filed a three-count bill of indictment against defendant, Byron Joseph. In Count 1, the State charged defendant with aggravated flight from an officer, pursuant to LSA-R.S. 14:108.1. In Count 2, defendant was charged with possession of cocaine in excess of 400 grams, pursuant to LSA-R.S. 40:967(F)(1)(c). In Count 3, the State charged defendant with simple burglary, LSA-R.S. 14:62. Defendant was arraigned on April 24, 2003, and pled not guilty to all charges. The trial court held a preliminary hearing on June 4, 2003. The trial court found probable cause as to Count 2, and no probable cause as to Counts 1 and 3.
Defendant filed a Motion to Suppress the Evidence on July 14, 2003. On August 26, 2003, the State amended the bill of information to add defendant's alias, Travis Brissette,[1] to all three counts. On that day, defendant was tried by a twelve-person jury as to Count 2 only. Counts 1 and 3 were later dismissed. The hearing on defendant's Motion to Suppress the Evidence was held out of the jury's presence during a trial recess. The trial court denied the motion. At the conclusion of trial, the jury rendered a verdict of guilty as charged.
On August 28, 2003, the trial court sentenced defendant to thirty years at hard labor. On that day, the State filed a habitual offender bill of information, alleging defendant to be a second felony offender. Defendant was advised of the allegations against him, and entered a denial. Defendant filed a Motion for Appeal on September 4, 2003. The motion was granted that day.[2]
The court held a habitual offender hearing on October 29, 2003. The court found defendant to be a second felony offender. On that day, the court vacated defendant's original sentence, and imposed an enhanced sentence of forty-five years at hard labor.

FACTS
Agent Shannon Jones testified that he is assigned to the Narcotics Division of the Jefferson Parish Sheriff's Office. On June 7, 2002, he was driving a marked police car southbound on Lake Avenue in Metairie. In an oncoming lane, he saw a Chevrolet Monte Carlo, driven by defendant, with illegally tinted windows and no vehicle inspection sticker. Jones made a U-turn in order to follow behind the Monte Carlo. He continued to follow the car into the parking lot of an apartment complex at 1601 Lake Avenue. Jones turned on his car's siren and overhead lights to effect a traffic stop.
Jones testified that defendant exited his car and walked to an apartment in the complex. Jones asked defendant to return to his car, and defendant complied. The officer explained to defendant that he was *594 stopping him for having illegal tinting on his car windows and for not having an inspection sticker. Jones asked defendant to produce his driver's license, car registration, and proof of insurance. Defendant continued to cooperate with the officer. Jones testified that the car was registered to defendant and Michael Dokes.
Jones testified that he could not see into the car through the windows due to the dark tinting. He asked defendant whether anyone else was in the car. Defendant, who was standing next to the open driver's side door, attempted to close the door. Jones testified that defendant appeared nervous. He feared that defendant might have a weapon inside the car that he could use to harm him. Jones asked defendant whether he could look inside the car. Defendant verbally consented to a search.
Jones testified that he located two Foot Locker shoe store shopping bags on the back seat. Each contained a shoe box. Jones opened the first box, and found shoes inside of it. When he opened the second box, he found three "bricks," or packages, of what appeared to him to be narcotics. Jones withdrew from the car and prepared to take his gun from its holster. He asked defendant to walk toward him, and defendant fled on foot.
Jones notified the sheriff's office headquarters that defendant had fled, and he began to chase him. When defendant jumped over a fence, Jones ended his pursuit and returned to the car to secure the evidence.
Narcotics Agents Frank Caraci and Richard Valle were dispatched to the scene. Caraci testified that Valle conducted a field test on the substance Jones had discovered, and that it was positive for cocaine. Caraci took possession of the cocaine. Caraci testified that he obtained a warrant for defendant's arrest. The officer also identified State's Exhibit 15, a traffic citation issued to defendant at the scene.
Daniel Waguespack, an expert in the analysis and identification of controlled dangerous substances, testified that he tested samples of white powder from each of the three packages seized, and performed chemical tests on them. He found that each sample was composed of about ninety-five per cent cocaine. Waguespack testified that the gross weight of the three packages was 3.38 kilograms, or 3,380 grams. That weight included the packaging. Waguespack further testified that he did not weigh the packages without the wrappings, but he estimated that they each contained one thousand grams of cocaine. He stated that cocaine is generally shipped in packages of one thousand kilograms each.
Lieutenant Bruce Harrison was accepted by the trial court as an expert in the use, packaging, distribution and value of narcotics. Harrison testified that the three kilograms ("kilos") of cocaine in evidence are consistent with distribution on a wholesale level. When kilos come into the country from South America, they are generally in compressed packages like these so as to make them smaller. Harrison testified that the going price for a kilo of cocaine is $18,000-$22,000. If it were broken down into retail dosages of one ounce each, it would be worth $800-$1,000 per ounce, for a total of $85,000-$107,000. By adulterating or "cutting" the cocaine with other substances, a dealer could make nearly $200,000 for the three kilos.

DISCUSSION
Defendant's counsel has presented two assignments of error and defendant has presented three pro se assignments of error. Defendant's counseled assignment of *595 error number one and his pro se assignments of error one through three all relate to the trial court's denial of defendant's motion to suppress and whether or not defendant gave a valid consent for the search of his car. Therefore, these assignments of error will all be addressed together.
The State has the burden, in a hearing on a motion to suppress the evidence, of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Butler, 01-0907, p. 6 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124. In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. Butler, 01-907 at p. 7, 812 So.2d at 124.
The Fourth Amendment to the United States Constitution and Article I, § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Mercante, 02-712, p. 4 (La.App. 5 Cir. 12/30/02), 836 So.2d 596, 599. But the right of law enforcement officers to stop and interrogate a person reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic violation is a valid basis for an investigatory stop. State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (per curiam); State v. Flowers, 04-190, p. 4 (La.App. 5 Cir. 7/27/04), 880 So.2d 887, 889.
Defendant concedes the traffic violations for which he was cited by Agent Jones constituted valid grounds to stop him under LSA-C.Cr.P. art. 215.1. He argues, however, that the officer overreached his authority by holding him longer than was necessary to issue traffic citations.
LSA-C.Cr.P. art. 215.1(D) provides, in pertinent part:
During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity....
Defendant contends that he should have been allowed to go after showing Agent Jones the documentation he requested. He argues the officer did not have reasonable suspicion to detain him, and that the evidence seized after that point was suppressible as the product of an unlawful search.
In United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the United States Supreme Court recognized that a stop that continues indefinitely will at some point no longer be justified as an investigatory stop. In determining whether a detention is too lengthy to be considered an investigatory stop, the courts must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. at 686, 105 S.Ct. at 1575. See also, State v. Preston, 04-269, p. 6 (La.App. 5 *596 Cir. 7/27/04), 880 So.2d 64, 68. In State v. Miller, 00-1657, pp. 2-3 (La.10/26/01), 798 So.2d 947, 949 (per curiam), the Louisiana Supreme Court noted that the courts have not developed a bright-line test to determine when a police-citizen encounter exceeds the bounds of a Terry stop.
Agent Jones testified at trial that defendant complied when he asked him to produce his driver's license, car registration, and proof of insurance. Defendant opened his car's driver's side door to retrieve the documents. Defendant stayed between the officer and the open doorway. Jones was unable to see into the car through the heavily tinted windows, so he attempted to look inside through the doorway. The officer testified that defendant moved to block his view.
According to Jones, defendant began to behave nervously, and repeatedly tried to close the car door. Defendant's demeanor led the officer to suspect there was "another problem." He asked defendant if he could search the inside of the car, and defendant gave his verbal consent.
During the mid-trial suppression hearing, held out of the jury's presence, Jones testified that he considered defendant's behavior suspicious because of the manner in which defendant attempted to close the car door. Defendant walked toward him, placing his hand behind his back to close the door, as if he were trying to keep Jones from seeing inside the car. Jones said he feared that defendant would try to retrieve a weapon from the car and use it to harm him. Jones did not ultimately find a weapon in the car. Jones testified that defendant was not free to leave during the encounter. He did not, however, handcuff defendant, or conduct a pat-down search of his person.
In State v. Miller, supra, a state trooper stopped the defendant when he saw her commit a traffic violation. The officer conducted a routine license and registration check. Prompted by the defendant's nervous behavior, the officer asked the defendant some questions. She told him she was driving from Houston to Atlanta overnight in a rented car. The defendant claimed a second name on the rental agreement was that of her cousin, who was not with her, as he had been arrested for possession of marijuana. The trooper asked the defendant for her permission to search the vehicle. When she refused, he had her wait for thirty minutes so that a narcotics detection dog could be brought to the scene. When the dog alerted to the car, officers opened the trunk and discovered a duffel bag containing a large package of marijuana.
The Louisiana Supreme Court found that the trooper had the right to stop the defendant, conduct a license and registration check, and engage her in conversation. The court further found that the defendant's nervous behavior and her unlikely explanation for her overnight trip in a car rented by someone who had been arrested for marijuana possession led to a permissible shift in the trooper's focus. In having the defendant wait while he sent for a drug detection dog, the officer diligently pursued a means to investigate that would likely dispel or confirm his suspicions in a brief amount of time. The court further noted that the trooper refrained from handcuffing the defendant or placing her in a patrol car while they waited for the dog, a circumstance that might have suggested a de facto arrest had taken place.
While there is nothing in the record to show precisely how long Jones detained defendant before obtaining his consent to a search, the time period was clearly brief. Based on the facts and the holding in Miller, Jones did not exceed the parameters of LSA-C.Cr.P. art. 215.1 in choosing *597 to further detain defendant and investigate when defendant exhibited uneasy behavior. As was the case in Miller, defendant was not held for an extended period of time, nor was he restrained pending Jones' investigation.
Defendant next argues that the evidence should have been suppressed because he did not give valid consent to search. A search made without a warrant issued on probable cause is per se unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Moreno, 619 So.2d 62, 66 (La.1993). Consent to search is such an exception when it is freely and voluntarily given by a person who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); State v. Triche, 03-149, p. 9 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 86, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. State v. Taylor, 04-90, p. 6 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 967, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193.
Oral consent is sufficient to constitute an exception to constitutional warrant and probable cause requirements. Id. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. State v. Triche, supra.
Agent Jones testified that, due to defendant's nervous behavior, he asked defendant whether he could look inside the car. The officer did not use a consent to search form because the forms were in his patrol car, and he felt that if he went to the car to retrieve a form, defendant might pull out a gun and harm him. Defendant verbally consented to a search. Jones testified that defendant opened the driver's side door a bit more, and offered to help the officer. He moved the electronic driver's seat back and forth to reveal there was nothing concealed beneath it. Out of concern for his own safety, Jones asked defendant to move to the front of the car while he completed the search. Defendant asked him, "[H]ow do I know you are not going to plant anything?" Jones told defendant that if he believed he was going to plant evidence, he could watch the search from the passenger side of the vehicle. While defendant watched, Jones searched the car and found three packages of cocaine in a shoebox on the car's back seat. At that point defendant fled. Jones testified that he did not threaten or coerce defendant in order to obtain his consent to search.
The record shows that defendant freely and voluntarily gave his consent to a search. Defendant argues that his consent was not voluntary because Jones failed to inform him that he had a right to refuse consent. Jones did testify during the motion hearing that he did not tell defendant he was not required to allow a search. But the jurisprudence does not require such a warning. The question of whether consent is voluntary is one of fact, determined by a totality of the circumstances. Lack of a warning is only one factor in determining the voluntary nature of the consent. Schneckloth v. Bustamonte, 412 U.S. at 227, 93 S.Ct. at 2048; State v. Hargrave, 93-628, p. 6 (La.App. 5 Cir. 1/25/94), 631 So.2d 1208, 1212.
*598 Defendant further argues that, even if his consent to search was valid, he revoked it when he raised the possibility that Jones would plant evidence in the car. That is not obvious from the record. Defendant actually assisted the officer with the search, and was next to the car watching the entire time. There is no indication that defendant withdrew his consent at any time. Jones addressed defendant's concern about whether he would plant evidence in the car by allowing him to watch the search.
Based on the foregoing, we find that both the traffic stop and the search were valid, as was defendant's consent to search, and the trial court did not err in denying defendant's motion to suppress the evidence.

ERRORS PATENT DISCUSSION (COUNSEL'S ASSIGNMENT OF ERROR NUMBER TWO)
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
First, the record does not show that defendant was arraigned following the amendment to the bill of information on August 26, 2003. That is likely due to the fact that not all of the proceedings for that date were transcribed. In any case, no corrective action is required. Defendant apparently proceeded to trial without objection, and thereby waived any irregularity. LSA-C.Cr.P. art. 555; State v. Echeverria, 03-898, p. 11 (La.App. 5 Cir. 11/25/03), 862 So.2d 163, 169.
Second, the trial court erred in failing to allow a three-day delay between conviction and sentence, as required by LSA-C.Cr.P. art. 873. The article provides, in pertinent part: "If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence.... If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." Defendant was convicted on August 26, 2003, and was sentenced only two days later, on August 28, 2003. There is nothing in the record to indicate that defendant waived the mandatory sentencing delay.
This Court has recognized the trial court's failure to allow the statutory sentencing delay as an error patent. State v. Cook, 98-848, pp. 11-12 (La.App. 5 Cir. 1/26/99), 729 So.2d 634, 640, writ denied, 99-0570 (La.6/25/99), 745 So.2d 1185. In Cook, this Court noted that the purpose of the three-day delay
is to allow the defendant time to file post-trial motions, including a motion for new trial, which must be filed between verdict and sentencing. If a defendant does not expressly waive the delay, a sentence imposed within the three day period is void. State v. Johnson, 275 So.2d 405 (La.1973); State v. Thom, 615 So.2d 355 (La.App. 5 Cir.1993).
Other Louisiana courts have found the error is subject to harmless error review. See, State v. Allen, 99-2358, p. 4 (La.App. 4 Cir. 3/21/01), 788 So.2d 62, 65; and State v. James, 96-472, p. 2 (La.App. 3 Cir. 12/11/96), 687 So.2d 485, 486, writ denied, 97-0069 (La.5/16/97), 693 So.2d 796. In James, the court determined that the trial court's failure to observe the three-day delay was harmless, as defendant did not argue he was prejudiced thereby.
In this case, defendant does not claim he was deprived of the opportunity to file post-trial motions prior to sentencing, nor that he was prejudiced in any way. The error does not require corrective action.
*599 Third, defendant's appeal was premature, in that he filed it after his original sentence was imposed, but prior to his habitual offender sentencing. The defect was cured, however, by defendant's subsequent sentencing. State v. Balser, 96-443, p. 7 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.
Fourth, the commitment/minute entry corresponding to defendant's original sentence reflects that defendant was convicted of possession of over twenty-eight grams of cocaine with intent to distribute. Defendant was actually convicted of possession with intent to distribute over 400 grams of cocaine. The offenses involve two different provisions of LSA-R.S. 40:967. Therefore, we order the trial court to amend the commitment to reflect the proper offense.
Fifth, there is nothing in the sentencing transcripts to show that the trial court advised defendant of the two-year prescriptive period for applying for post-conviction relief under LSA-C.Cr.P. art. 930.8.[3] We order the trial court to provide defendant with notice of the prescriptive period, and to file written proof of such notice in the record. See, State v. Walker, 03-1072, p. 6 (La.App. 5 Cir. 12/30/03), 865 So.2d 172, 175.
Sixth, the trial court failed to impose the required statutory restrictions on defendant's habitual offender sentence. LSA-R.S. 15:529.1(G) requires that all habitual offender sentences be served without benefit of probation and suspension of sentence. The Habitual Offender Law does not restrict parole eligibility, but LSA-R.S. 40:967(G) requires that a defendant serve without eligibility for parole the mandatory minimum sentence for offenders under LSA-R.S. 40:967(F).[4] At the time of the underlying offense, the minimum sentence under R.S. 40:967(F) was fifteen years.[5] Therefore, the trial court should have imposed the sentence without benefit of parole for the first fifteen years, and without benefit of probation or suspension of sentence for the entire term. No corrective action is necessary, as LSA-R.S. 15:301.1(A) makes the statutory restrictions self-activating. State v. Esteen, 01-879, pp. 29-30 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 78-79, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983.
In accordance with the above, we affirm defendant's conviction and sentence and order the trial court to correct the errors patent as discussed above.
AFFIRMED.
NOTES
[1] The name is alternately spelled Brisette and Brissette in the record.
[2] Defendant's motion for appeal was premature, as it was filed after conviction and sentence, but before his habitual offender sentencing. See errors patent discussion, ante.
[3] The commitments corresponding to defendant's original sentencing and habitual offender sentencing reflect that defendant was advised of the prescriptive period. However, where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[4] The restrictions imposed on parole eligibility imposed on multiple offender sentences under LSA-R.S. 15:529.1 "are those called for in the reference statute." State v. Bruins, 407 So.2d 685, 687 (La.1981). See also, State v. Singleton, 03-1307, p. 5 (La.App. 5 Cir. 3/30/04), 871 So.2d 596, 599.
[5] A judge must compute the term of parole eligibility by considering only LSA-R.S. 40:967(F), and without regard to the calculation of sentencing ranges under the Habitual Offender Law. State v. Tate, 99-1483, p. 2 (La.11/24/99), 747 So.2d 519, 520 (per curiam).