959 So.2d 957 (2007)
STATE of Louisiana
v.
Ronald O. CLESI.
No. 2006 KA 1250.
Court of Appeal of Louisiana, First Circuit.
February 14, 2007.
*959 Walter P. Reed, District Attorney, Covington, Kathryn Landry, Special Appeals Counsel, Baton Rouge, Counsel for Appellee State of Louisiana.
Frank Sloan, Louisiana Appellate Project, Mandeville, Counsel for Defendant/Appellant Ronald O. Clesi.
Ronald O. Clesi, Angola, Pro Se.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
The defendant, Ronald O. Clesi, was charged by bill of information with possession of a schedule II controlled dangerous substance (cocaine), a violation of LSA-R.S. 40:967(C). The defendant pled not guilty. Following a jury trial, the defendant was found guilty as charged. The defendant was sentenced to five (5) years imprisonment at hard labor. The State filed a multiple offender bill of information. Following a multiple offender hearing, the trial court found the defendant to be a fourth felony offender. The defendant was sentenced to life imprisonment at hard labor pursuant to LSA-R.S. 15:529.1(A)(1)(c)(i),[1] and the five-year sentence for the possession of cocaine conviction was vacated. The defendant objected to the sentence as being excessive. The defendant now appeals, asserting three counseled assignments of error and three pro se assignments of error. We affirm the conviction. However, we reverse the adjudication of the defendant as a fourth or subsequent felony habitual offender, vacate the enhanced sentence, and remand for further proceedings.

FACTS
On December 12, 2001, at about 11:00 p.m., based on an anonymous citizen's complaint about narcotics at the defendant's residence in Slidell, Detective Kevin Swan of the Slidell Police Department, along with three other police officers, including Sergeant Danny Fonte of the St. Tammany Parish Sheriff's Office, went to the Chamale Condominiums where the defendant lived. Prior to going to defendant's residence, the police officers determined the defendant had an outstanding warrant for *960 his arrest. Detective Swan knocked on the defendant's door, identified himself and, after a period of time, the defendant opened the door and invited the officers inside. Two females were also in the defendant's residence. Detective Swan informed the defendant about the narcotics complaint and about the warrant for his arrest. Detective Swan found a kitchen knife in the small of the defendant's back. The defendant explained that he had armed himself because he was worried about being robbed by drug dealers. The defendant was patted down for weapons and no other weapons were found.
Detective Swan produced a consent to search form. After going over the form with the defendant, the defendant signed the form. The defendant also gave verbal consent to search his residence. Following the consent of the defendant, all three occupants of the residence were advised of their Miranda rights.[2] Sergeant Fonte found rocks of crack cocaine in the garbage disposal of the kitchen sink.[3] Detective Swan found $3,944.00 in the defendant's bedroom closet. The defendant told Detective Swan that he had purchased $1,000.00 worth of crack cocaine and that they had been ingesting it. He also told Detective Swan that when the police knocked on the door, July Driebe, one of the female occupants, ran to the kitchen and placed crack cocaine in the kitchen sink. The defendant was arrested and, before being placed into a police unit, was patted down thoroughly. A bag containing small rocks of crack cocaine was found in the defendant's right front pocket.[4]

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant argues that his sentence imposed is illegal. Specifically, the defendant contends that the trial court failed to specify that the sentence is not subject to probation or suspension of sentence, as required by LSA-R.S. 15:529.1(G).[5]
The trial court should have imposed the sentence without benefit of probation or suspension of sentence. However, no corrective action is necessary, as LSA-R.S. 15:301.1(A) makes the statutory restrictions self-activating. State v. Joseph, XXXX-XXXX, p. 14 (La.App. 5 Cir. 4/26/05), 901 So.2d 590, 599, writ denied, XXXX-XXXX (La.2/3/06), 922 So.2d 1176, citing State v. Esteen, 2001-879, pp. 29-30 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 78-79, writ denied, XXXX-XXXX (La.12/13/02), 831 So.2d 983.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO AND PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In these assignments of error, the defendant argues that the sentence imposed is excessive. Because we must reverse the habitual offender adjudication and vacate the sentence, we do not reach the merits of these assignments of error.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, the defendant argues the trial court failed *961 to inform him of the delays for filing for postconviction relief.
The trial court did not advise the defendant of the time limits for filing for postconviction relief pursuant to LSA-C.Cr.P. art. 930.8. Upon resentencing, the trial court is directed to give the defendant notice of the prescriptive period for applying for postconviction relief.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
In his second pro se assignment of error, the defendant argues that the evidence presented at the multiple offender hearing was insufficient to prove that the defendant was a fourth felony offender. Specifically, the defendant contends that the State failed to prove the identity of the defendant as the same person convicted of the previous convictions.
In order to obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver's license number, sex, race, and date of birth. State v. Payton, 2000-2899, p. 6 (La.3/15/02), 810 So.2d 1127, 1130-1131.
At the habitual offender hearing, the State submitted into evidence exhibits and testimony that established five prior felony convictions of the defendant. The five prior convictions, all by guilty pleas, are as follows: (1) 1975 conviction for possession of preludin, a violation of LSA-R.S. 40:967, Criminal District Court, Parish of Orleans, docket number 247635; (2) 1982 conviction for forgery (four counts), a violation of LSA-R.S. 14:72, Criminal District Court, Parish of Orleans, docket number; (3) 1982 conviction for theft of property valued over $500.00, a violation of LSA-R.S. 14:67, 34th Judicial District Court, Parish of St. Bernard, docket number 69543; (4) 1992 conviction of unlawful touching (of a child under fourteen years of age), a violation of section 97-5-23, Mississippi Code of 1972, Circuit Court, Hancock County, docket number 7584; and (5) 1998 conviction for attempted possession of cocaine, a violation of LSA-R.S. 40:967(C) and 40:979, 22nd Judicial District Court, Parish of St. Tammany, docket number 270430.
For each of the defendant's convictions, the State submitted into evidence certified copies of the bills of information (indictment for the Mississippi conviction), guilty pleas, and arrest registers containing the defendant's fingerprints. The bills of information for the forgeries, the theft, and the attempted possession of cocaine contain the defendant's fingerprints. The bill of information for the possession of preludin, which does not contain the defendant's fingerprints, was submitted into evidence with the corresponding arrest register, which contains the defendant's fingerprints. The (Mississippi) bill of indictment for the unlawful touching is part of a "pen pack,"[6] which contains the defendant's fingerprints.
*962 The State called Deputy Angela Powell with the St. Tammany Parish Crime Lab Division to testify about fingerprint comparisons. The trial court accepted her as an expert in the field of fingerprint analysis and comparison.[7] Deputy Powell testified that she prepared a fingerprint card of the defendant's fingerprints on that day (the day she testified). The fingerprint card was submitted into evidence. Deputy Powell compared the defendant's fingerprints on the bills of information (or indictment, i.e., Mississippi pen pack) and/or arrest registers with the defendant's prints on the fingerprint card. Deputy Powell concluded that the person whose prints were on the bills of information and/or arrest registers and the defendant's fingerprint card were one and the same person.
We find that the State proved through expert testimony and the aforementioned exhibits submitted into evidence that the defendant was the same person convicted of the five predicate felony convictions. This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In his third pro se assignment of error, the defendant argues that the trial court erred when it failed to quash the habitual offender bill. Specifically, the defendant contends that at several of his prior guilty pleas, he was not properly Boykinized.[8] The defendant further contends that the State failed to prove that the "cleansing period"[9] for one or more of his convictions had not expired. This argument has merit.
In order for a guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. The judge must also ascertain that the accused understands what the plea connotes and its consequences. If the defendant denies the allegations of the bill of information, the State has the initial burden to prove the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry. State v. Henry, 2000-2250, p. 8 (La.App. 1 Cir. 5/11/01), 788 So.2d 535, 541, writ denied, 2001-2299 (La.6/21/02), 818 So.2d 791. While a colloquy between the judge and defendant is the preferred method of proof of a free and voluntary waiver, the *963 colloquy is not indispensable when the record contains some other affirmative showing of proper waiver. State v. Carson, 527 So.2d 1018, 1020 (La.App. 1 Cir.1988). Everything that appears in the entire record concerning the predicate, as well as the trial judge's opportunity to observe the defendant's appearance, demeanor, and responses in court, should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. Boykin only requires that a defendant be informed of the three rights enumerated above. The jurisprudence has been unwilling to extend the scope of Boykin to include advising the defendant of any other rights he may have. State v. Henry, 2000-2250 at pp. 8-9, 788 So.2d at 541.
At the habitual offender hearing, following the State's presentation of its evidence, the defendant objected to the first four prior guilty pleas in evidence as inadequate because he was not advised of his Boykin rights.[10] The defendant met his burden in showing an infringement of his rights in the taking of the pleas. Instead of the State pointing out, however, that the guilty pleas were constitutional because perhaps the defendant had, indeed, been informed of each of his Boykin rights, the prosecutor stated:
Your Honor, at this point we're simply on the issue of admissibility. These are certified copies. I don't think the issue defense raises relates to the issue of admissibility, perhaps an appropriate argument as to whether, in fact, these are constitutionally valid convictions that could be used to enhance his sentence.
Notwithstanding the State's analysis of the burden-shifting principles involved in a habitual offender hearing, the trial court indicated that it was going to review all of the submitted evidence and that it was going to take the matter under advisement. The trial court found the defendant to be a fourth felony habitual offender upon proof of five prior felony convictions.
For proof of the defendant's 1975 conviction for possession of preludin (docket number 247635), the State submitted into evidence the minute entry of the guilty plea. The minute entry does not indicate that the defendant was informed of each of his Boykin rights.[11] Because this minute entry does not reflect a valid guilty plea, it cannot be used to enhance the defendant's sentence for the instant offense.
For proof of the defendant's 1982 conviction for theft of property valued over $500.00 (docket number 69543), the State submitted into evidence the minute entry of the guilty plea. The minute entry does not indicate that the defendant was informed of each of his Boykin rights.[12] Because this minute entry does not reflect a valid guilty plea, it cannot be used to enhance the defendant's sentence for the instant offense.
For proof of the defendant's 1992 Mississippi conviction for unlawful touching (docket number 7584), the State submitted into evidence a pen pack, which contained the court's order of the defendant's sentence. *964 Similar to a minute entry, the order summarizes the defendant's guilty plea. The order does not indicate that the defendant was informed of each of his Boykin rights.[13] Furthermore, the pen pack does not contain the transcript of the guilty plea. Because this order does not reflect a valid guilty plea, it cannot be used to enhance the defendant's sentence for the instant offense.
Based on the record before us, we find that three of the defendant's prior convictions cannot be used to enhance his sentence for the instant offense.[14] Since two prior convictions, at most,[15] could be used to adjudicate the defendant a third felony habitual offender, the trial court erred in adjudicating the defendant a fourth felony habitual offender. Accordingly, we must reverse the defendant's fourth felony habitual offender adjudication, vacate his sentence and remand this matter for further proceedings. The defendant is not protected by principles of double jeopardy from being tried again under the Habitual Offender Law. See State v. Young, 99-1310, p. 5 (La.App. 1 Cir. 4/17/00), 769 So.2d 12, 14.
CONVICTION AFFIRMED. ADJUDICATION OF DEFENDANT AS FOURTH OR SUBSEQUENT FELONY HABITUAL OFFENDER REVERSED AND SENTENCE VACATED. REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Louisiana Revised Statute 15:529.1(A)(1)(c)(i) provides: "The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life. . . ."
[2] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The rocks were loose in the disposal, not in any type of bag or container.
[4] The rocks found in the sink and on the defendant were sent to the Louisiana State Police Crime Lab and tested positive for cocaine.
[5] Subsection (G) states: "Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence."
[6] A "pen pack" is that packet of information from the Department of Corrections (the penitentiary) about the defendant/prisoner, usually containing the time calculations for the defendant's release date from prison, applicable bills of information and/or arrest sheets, a photograph of the defendant, relevant information about the defendant (e.g. address, physical description, social security number, date of birth), and the defendant's fingerprints.
[7] In his brief, the defendant suggests that Deputy Powell should not have been qualified as an expert. However, following the trial court's ruling that Deputy Powell qualified as an expert, the defendant did not lodge a contemporaneous objection to the ruling. The defendant is, therefore, precluded from raising the issue on appeal. See LSA-C.Cr.P. art. 841(A).
[8] See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[9] See State v. Everett, 2000-2998, pp. 6-7 (La.5/14/02), 816 So.2d 1272, 1276, for a discussion of the term "cleansing period." See also its use in State v. Washington, XXXX-XXXX, p. 2 (La.4/28/06), 927 So.2d 271, 272.
[10] At this point in the hearing, the trial court asked the defendant to address his motion to quash, which was filed prior to the hearing.
[11] The relevant portion of the minute entry states: "The Court explained to the Defendant his Constitutional Rights and questioned the Defendant relative to his plea of guilty. The Court found that there was a basis in fact for the plea of guilty, and further found that the Defendant's plea of guilty was voluntarily and intelligently entered."
[12] The relevant portion of the minute entry states: "Defendant Ronald Clesi withdrew former plea and pleaded guilty. Defendant was duly sworn, re-arraigned, and boykinized [sic]. Court accepts guilty plea and defendant waived all delays in sentencing."
[13] The relevant portion of the minute entry states:

The Defendant, RONALD O'DELL CLESI, having filed a petition to enter a plea [of] Guilty in which RONALD O'DELL CLESI, was advised of his legal and constitutional rights in the premises and being further advised of the consequences of such a plea, did then and there enter his plea of Guilty to said charge. The Court thereupon found that the Defendant knowingly and voluntarily waived his constitutional rights to trial; that the plea of Guilty was freely and voluntarily made; that the Defendant is Guilty based upon the facts offered to the Court and the Court adjudicates the Defendant to be Guilty of the charges of UNLAWFUL TOUCHING in cause number 7584.
[14] The State submitted into evidence valid guilty pleas for the defendant's other two convictions. For proof of the defendant's 1982 conviction for forgery (docket number 287130), the State submitted the minute entry of the guilty plea, wherein the court informed the defendant of his Boykin rights, i.e., each right appears in the minute entry. Along with this minute entry, the State submitted a waiver of constitutional rights, dated and signed by the defendant, his attorney, and the judge. The waiver explains each of the Boykin rights being waived pursuant to his guilty plea. For proof of the defendant's 1998 conviction for attempted possession of cocaine (docket number 270430), the State submitted the minute entry of the guilty plea, wherein the court informed the defendant of his Boykin rights, i.e., each right appears in the minute entry. Along with this minute entry, the State submitted the transcript of the Boykin hearing, wherein the defendant is explained his rights.
[15] We indicate "at most" because it is not clear whether the cleansing period for the 1982 conviction for forgery (docket number 287130) had expired or not. Not counting the 1982 conviction for theft of property valued over $500.00 (docket number 69543) because of the invalid guilty plea, it is not clear from the record before us that in the ten-year period between the 1982 forgery conviction and the 1992 unlawful touching conviction, the cleansing period did not expire. The State failed to establish a date of discharge for the 1982 forgery conviction.