MURPHY, J.
[ t Defendant appeals his convictions and sentences following a Crosby plea and multiple offender adjudication. For the reasons that follow, defendant’s convictions, and his sentence for count two, are affirmed. Defendant’s enhanced sentence for his conviction of possession with intent to distribute Acetyl Fentanyl is vacated, and we remand for resentencing consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
This is defendant’s second appeal. In defendant’s prior appeal, we vacated the guilty plea, set aside defendant’s convictions and sentences, and remanded for further proceedings. State v. Ables, 15-720 (La.App. 5 Cir. 02/24/16), 186 So.3d 1274. On remand, after defendant’s motions to suppress evidence and statement were denied, defendant pled guilty pursuant to State v. Crosby[1] to one count of possession with intent to distribute Acetyl Fentanyl, a violation of La. R.S. 40:966(A), and to one count of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. On July 12, 2016, in accordance with the plea agreement, defendant was sentenced to twenty years imprisonment in the Department of Corrections on counts one and two, and the sentences were ordered to run concurrently. On the same date, the State filed a multiple offender bill of information as to count one, alleging defendant to be a third felony offender. Defendant stipulated to the multiple offender bill and the trial court sentenced defendant under La. R.S. 15:529.1 to twenty years imprisonment without benefit of probation or suspension of sentence. The instant appeal follows.
LAW AND ANALYSIS
Both in his counseled and pro se assignments of error, defendant argues that the trial court erred in applying the inevitable discovery doctrine to deny his motions to suppress.
IgOn May 10, 2016, a hearing on defendant’s motions to suppress evidence and his statement was held. At the motion to suppress hearing, Deputy Glenn Webber of the Jefferson Parish Sheriffs Office testified that on March 8, 2015, at 1:30 a.m., he and Sergeant David Canas were dispatched to 4061 Indigo Court, Harvey, Louisiana, regarding a call concerning the illegal discharge of a firearm and criminal damage to property. Upon arrival, Deputy Webber spoke to Darren Barrier, who explained that his wife had heard “a loud popping noise” and that when walking through his home he observed what he believed to be a bullet hole in his wall. The officers confirmed the presence of the bullet hole in the wall and retrieved a projectile from the floor of the master bedroom. Based on the estimated trajectory of the bullet, the officers looked at the residence next door at 4065 Indigo and discovered a similar bullet hole on the exterior of the home. Upon discovery of the bullet hole on the exterior of the neighboring residence, Deputy Webber contacted his ranking officer, Sergeant Robert Fox. When Sergeant Fox arrived on the scene they attempted to speak to the residents at 4065 Indigo. After a prolonged period of time, the officers’ knocks were answered by the owners of the residence, Darrell Painter and his wife, Lisa Painter. The Painters were advised of the situation and indicated that they were unaware of a firearm having been discharged in their home. Mr. Painter then signed a consent to search “the residence for any signs of aggravated *480 criminal damage and illegal discharge of a firearm.” They further advised the officers that their adult son, defendant, also lived at the residence but was not present at the time.
During a search of the residence, a bullet hole was observed in the wall of defendant’s bedroom, a bullet was found on the bed, a spent bullet casing was found on a night stand, and a concealed gun holster and an empty gun case were also discovered. Despite the Painters’ information to the contrary, during the search of their home, defendant was found in the dark master bathroom without Rpants or shoes. Defendant was patted down for officer safety, and a set of keys was removed from around his neck for safety reasons. He was then detained and- advised of his rights per Miranda,[2] after which time defendant told the officers that his “friend” had discharged the firearm and that he could retrieve the “gun from him tomorrow.”
Having failed to locate the firearm, and once the occupants of the residence were secured, the officers continued their search. In the fenced in backyard of the Painters’ residence, Sergeant Fox located an overturned children’s pool. Underneath the pool was a gray locked box. The officers asked defendant whether any of the keys found around his neck would open the box. Defendant initially did not reply, but when asked a second time, responded, “/all see what’s in the box, once you open the box. Can I get my pants and my shoes?” The officers then used one of the keys found on the keychain retrieved from defendant’s person to open the box, revealing two firearms and a brown powdered substance. Deputy Webber testified on cross-examination that they opened the locked box to determine whether it contained a firearm. He noted that he would not have felt that they had adequately secured the residence until the box was opened and its contents discovered because of the presence of the minor child and other occupants of the house. Defendant was arrested and transported to the Correctional Center. During his transport defendant asked Deputy Webber whether the neighbors were “upset that a bullet went through their wall.”
Darrell Painter, defendant’s step-father, testified that his wife, their nine-year-old daughter, and defendant were living together on the night the police knocked on his door inquiring about the discharge of a firearm. Mr. Painter testified that he told the officers he was unaware of a gun being discharged in his home. Mr. Painter explained that he asked the officers to obtain a search warrant pbut ultimately signed a consent to search his residence after the officers told him that his wife and child would have to wait outside in the cold until one could be obtained. According to Mr. Painter, at no point did any of the officers advise him of what they were searching for. Mr. Painter further testified that he heard defendant tell the officers to obtain a search warrant. Lastly, Mr. Painter testified that he had never before seen the locked box and did not know to whom it belonged.
Sergeant Robert Fox testified for the State on rebuttal. Sergeant Fox testified that he explained to Mr. Painter that it was necessary to search his house for evidence concerning a gunshot that had been fired from inside his residence. It was explained to Mr. Painter that a consent to search could be executed or that they could obtain a search warrant for the residence after securing the residence by removing the occupants from the home until a warrant could be obtained so as to pro *481 tect against the destruction of any evidence. Sergeant Fox testified that Mr. Painter ultimately signed the consent to search form, and at no point did he limit the scope of his consent regarding certain areas of his residence.
Defendant’s motion to suppress was taken under advisement. In his post-hearing memorandum in support of his motion to suppress, defendant argued that because Mr. Painter’s consent to search did not include consent to search the locked box found in the backyard (to which Mr. Painter did not claim ownership), the contents of the box should be considered fruit of the poisonous tree and suppressed. The State filed an opposition in response, arguing that the officers properly searched the locked box because: 1) Mr. Painter had apparent authority to consent to its search, 2) defendant provided his implied consent to search the locked box, and B) searching the locked box without a warrant was necessary due to the exigent circumstances calling officer safety and the safety of others in the ^residence into question. The State further argued that even if the officers did exceed constitutional bounds in searching the locked box, the evidence was not subject to the exclusionary rule because the actions taken by the officers were done in good faith, and thus, the evidence was properly admitted pursuant to the inevitable discovery doctrine.
On June 15, 2016, the trial court denied defendant’s motion to suppress, finding, in summary, the following: The police officers were justified in approaching the home in the first place based upon the evidence that they had become aware of and the fact that there was a bullet hole through the neighboring residence. Ultimately, the consent given by defendant’s stepfather to search the residence was a valid consent. Because the police were looking for a gun, they had the right to look underneath the pool at that time. Any container that was large enough to contain a gun would be a valid container as far as the search goes. The metal box as described by the officers was large enough to contain a gun and, therefore, it would be reasonable for the officers to want to look into that box or to seize that box until they had a warrant to look inside.
However, the trial court found that defendant did not consent to have the officers open the box. The trial court concluded:
Should the officers and I believe the officers should have—I should say, sought consent from Mr. Abies and that consent was denied, the Court believes that those officers certainly would have and I believe that was sufficient evidence to show that the officer would have obtained that warrant.
There is no question in this Court’s mind that probable cause existed at that point to obtain the warrant. Based upon all of the facts and circumstances involved I believe it is certainly reasonable and I think the State proved that the officers would, in fact, have obtained a warrant would they have been deprived from opening the box or had they not opened the box prematurely.
So for those reasons I do not believe that the opening of the box violates—or I do believe that the opening of the box constitutes an exception to the Exclusionary Rule despite the fact that there was a warrantless search. I believe the Exclusionary Rule in this case would not | fialso serve any particular purpose in that the officers conduct was not motivated by ill will or any type of ill practices, if you will.
I believe based upon the testimony that the Court heard that the officers actions were a mistake and not a pattern of conduct such that the Exclusionary *482 Rule would benefit the suppression of evidence or the Exclusionary Rule justifies the suppression of the evidence in this particular case.
So for those reasons I do find that the Inevitable Discovery Doctrine has been met. That the State has carried its burden of proof in that regard and for those reasons despite the fact that it was a nonconsensual search of the box, I do believe that the evidence should not be suppressed.
Defendant argues on appeal that the trial court erroneously denied his motion to suppress on two grounds. One, that Mr. Painter’s consent to search the residence was vitiated when the officers coerced him into signing the consent form by threatening to place his family outside in the cold if a search warrant had to be obtained. And two, the inevitable discovery doctrine did not apply to the search of the locked box.
The Fourth Amendment and Article I § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. State v. Flagg, 99-1004, pp. 6-7 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 526, writ denied, 00-1510, (La. 3/9/01), 786 So.2d 117. In an effort to discourage police misconduct in violation of these standards, if evidence is derived from an um-easonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Tucker, 92-2093, 92-2130 (La. 5/24/93), 626 So.2d 707, 710; State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id; State v. Butler, 01-0907, p. 6 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
Ultimately, the State bears the burden to show that a warrantless search falls within one of the exceptions to the rule that a warrantless search is, per se, unconstitutional. Flagg, 99-1004, 760 So.2d at 526. One such exception is consent 17to search when consent is given freely and voluntarily by one who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. State v. Joseph, 04-1240 (La. App. 5 Cir. 4/26/05), 901 So.2d 590, 597, writ denied, 05-1700 (La. 2/3/06), 922 So.2d 1176. “In the context of a premises search, generally consent may be obtained from one having mutual use of the premises.” State v. Shed, 36,321 (La.App. 2 Cir. 9/18/02), 828 So.2d 124, 131. The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search. State v. Joseph, supra (citing State v. Taylor, 04-90 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 967, writ denied, 04-1649 (La. 11/19/04), 888 So.2d 193). Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. Id.
Here, the officers were investigating a call made by the residents at 4061 Indigo Court concerning the illegal discharge of a firearm and criminal damage to property. It was discovered that a bullet had passed through their residence and, based on the estimated trajectory of the bullet, was determined to have been fired from inside the neighboring residence at 4065 Indigo Court. When officers observed a similar bullet hole at 4065 Indigo, they sought the consent of the owner, Mr. Painter, to search his property. Mr. Painter testified that he initially advised the officers to obtain a search warrant, but later provided his consent to search only after being told that his family would have to wait outside in the cold while a search warrant was obtained.
*483 A statement by police officers that they will apply for a warrant if refused consent for a search does not necessarily vitiate the voluntariness of the consent. State v. Franklin, 95-1876 (La. 1/14/97), 686 So.2d 38; State v. MacDonald, 390 So.2d 1276 (La. 1980). The determination of the voluntariness of the consent turns on the overall facts and circumstances of the particular case. State v. Edwards, 434 So.2d 395 (La. 1983). The trial judge’s factual determination on this issue is entitled to great weight on appellate review. Id.
Under Mr. Painter’s version of the events, his consent was coerced. However, the trial judge rejected his version and credited that given by the police officers. According to the officers, they merely advised Mr. Painter that a consent to search could be executed or that they would secure the house by removing the occupants until a warrant could be obtained so as to protect the destruction of any evidence. Under the officers’ version, we find the trial judge had a reasonable basis for finding Mr. Painter’s signed consent was given freely and voluntarily and that he did not err in finding the officer’s advisal vitiated Mr. Painter’s valid consent.
Defendant further contends the trial court erred in finding the inevitable discovery doctrine applicable to the search of the locked box found in the backyard.
At the outset, it is noted that while Mr. Painter consented to “a complete search of 4065 Indigo Drive, Harvey, LA 70058,” which included the search of his fenced in backyard, as the trial court appears to have properly found, his consent did not encompass the locked metal box found in the backyard to which Mr. Painter possessed neither actual nor apparent authority over.
It has long been held that another occupant of a home can provide valid consent for a search of the premises. In United State v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the Supreme Court held that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. Matlock, 94 S.Ct. at 993. A footnote to the foregoing continues:
| flCommon authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their, number might permit the common area to be searched.
Matlock, 94 S.Ct. at 993 n.7.
Here, the trial court found Mr. Painter did not have actual or apparent authority to consent to opening the locked box found to belong to his adult stepson. At the motion hearing, the State failed to demonstrate that a person of reasonable caution would believe Mr. Painter had actual or apparent authority to consent to the police search of the locked box. The locked box was found underneath an overturned children’s swimming pool in the backyard. Mr. Painter testified that when asked about the locked box, he denied ownership of the *484 box, telling the officers that he had never before seen the box and did not know to whom it belonged. The only key found during the officers’ search of the residence which fit the lock on the box was removed from around a keychain hanging from defendant’s neck. Accordingly, the testimony at the suppression hearing did not establish that Mr. Painter had access to the box or had defendant’s permission to access the box.
Thus, without consent, in order for the evidence found in the locked box to be admissible, it must fall under one of the exceptions to the exclusionary rule. Under the facts and circumstances of this case, we find that the trial court correctly held the inevitable discovery doctrine applicable. The inevitable discovery doctrine permits the admission of evidence, which otherwise would have been excluded for police misconduct, if the prosecution can establish, by a preponderance of the evidence, that the tainted evidence “ultimately or inevitably would have been |indiscovered by lawful means.” Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
In State v. Lee, 05-2098 (La. 1/16/08), 976 So.2d 109, the Louisiana Supreme Court explained the inevitable discovery rule as follows:
One of the theories courts use in addressing “fruit of the poisonous tree” issues is the inevitable discovery rule. The inevitable discovery doctrine “is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.” Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because both seek to avoid excluding evidence the police “would have obtained ... if no misconduct had taken place.” Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence that “the information ultimately or inevitably would have been discovered by lawful means....” Id.; State v. Vigne, 01-2940 (La. 6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus “involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment....” Nix v. Williams, 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; State v. Vigne, 820 So.2d at 539.
Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement would have inevitably secured the evidence by lawful means, not simply that they could have. Thus, a mere showing that the police had probable cause for a search and could have secured a warrant from a neutral magistrate does not satisfy the doctrine, because it would effectively obviate the Fourth Amendment preference for warrants and reduce the exclusionary rule to cases in which the police lack probable cause. See United States v. Elder, 466 F.3d 1090, 1091 (7th Cir. 2006)(“The usual understanding of that doctrine is that the exclusionary rule should not be applied when all the steps required to obtain a valid warrant have been taken before the premature search occurs [citing Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)] .... If probable cause alone—without putting in train the process of applying for a warrant— were enough to invoke the inevitable- *485 discovery doctrine, that would have the same effect as limiting the exclusionary rule to searches conducted without probable cause.”)', see also 6 LaFave, Search and Seizure, § 11.4, at 278-79 (Fourth Ed.) (“Circumstances justifying application of the ‘inevitable discovery’ rule are most likely to be present if these [independent] investigative procedures were already in progress prior to the discovery via illegal means, as in Nix v. Williams, or where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later.”).
State v. Lee, 05-2098 at 23-24, 976 So.2d at 127-128.
InHere, in finding the evidence in the locked box would have eventually been legally discovered, the trial court reasoned that the officers were actively investigating an unauthorized discharge of a weapon. Pursuant to this investigation they located evidence of the firing of a weapon, namely, various bullet holes in the home, including one found in defendant’s bedroom. The officers also located a bullet on the bed, a spent bullet casing on a night stand, a concealed gun holster, and an empty gun case—evidence related to the crime being investigated. In their attempts to locate the weapon that had been used to allegedly fire the shot that entered the neighbor’s home, defendant was discovered in the dark master bathroom with a set of keys— with one key belonging to the locked box— around his neck. Thus, investigative procedures were well underway at the time the officers located the locked box in the backyard. Moreover, once the locked box was recovered, defendant was questioned about its contents, to which defendant replied, “/all see what’s in the box, once you open the box.” Knowing the object of their search could be contained in the locked box, according to the trial court, “it would have been unreasonable to believe that when the officers found the box to be locked that the investigation would have stopped at that point.” When all of these factors are combined, the officers possessed sufficient probable cause to obtain a search warrant for the contents of the locked box and a search warrant would have been obtained.
The Exclusionary Rule, which seeks to deprive the prosecution of evidence tainted by official wrongdoing in order to discourage further improprieties, would serve no purpose in this case where the officers’ conduct was found to have not been motivated by “ill will or any type of ill practices.” Accordingly, based on the foregoing, we find the trial court properly found that absent the officers’ error in prematurely opening the locked box, the contraband would eventually have been | ialegally discovered, and that exclusion under these circumstances would be inappropriate.
ERROR PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). We note the following:
With respect to defendant’s enhanced sentence on count one, La. R.S. 40:966(B)(2) provides for a term of imprisonment at hard labor for not less than five years nor more than thirty years, at least five years of which shall be served without benefit of parole, probation, or suspension of sentence. A defendant’s sentence under the Habitual Offender Law, La. R.S. 15:529.1, is determined by the sentencing provisions of both the underlying crime and the Habitual Offender Law. State v. Holmes, 12-351 (La.App. 5 Cir. 12/11/12), 106 So.3d 1076, 1081-82, writ denied, 13-86 (La. 6/14/13), 118 So.3d 1080. Here, *486 while defendant was sentenced on count one as a third felony offender pursuant to La. R.S. 15:529.1 to twenty-years imprisonment without benefit of probation or suspension of sentence, the trial court failed to order that at least five years of defendant’s sentence is to be served without benefit of parole. •
La. C.Cr.P. art. 556.1(A)(1) provides that, prior to accepting a guilty plea, the court must personally ■ inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty and the maximum possible penalty. Here, while defendant was aware of the sentencing range for the offense and was informed of the probation and suspension of sentence restrictions, he was not informed that his enhanced sentence would be imposed without the benefit of parole for at least five years. There is no indication in the record or suggestion by defendant that there was any inducement regarding the restriction of benefits in | tathis case. Thus, we find that defendant’s guilty pleas were constitutionally acceptable and were to his advantage as a result of effective plea-bargaining.
However, while La. R.S. 15:301.1 typically obviates the need to correct the sentence, where the statute gives the trial court discretion as to the number of years imposed to be served without benefits, the reviewing court should vacate the illegally lenient sentence and remand for resen-tencing. Because La. R.S. 40:966(B)(2) provides that “at least five years” of the sentence shall be served without benefit of probation, parole, or suspension of sentence, we vacate defendant’s enhanced sentence for his conviction of possession with intent to distribute Acetyl Fentanyl and remand for resentencing. See State v. Alfaro, 13-39 (La.App. 5 Cir. 10/30/13), 128 So.3d 515, 534, writ denied, 13-2793 (La. 5/16/14), 139 So.3d 1024.
DECREE
For the foregoing reasons, defendant’s convictions, and the sentence for count two, are affirmed. Defendant’s enhanced sentence for his conviction of possession with intent to distribute Acetyl Fentanyl is vacated, and we remand for resentencing consistent with this opinion.
CONVICTIONS AFFIRMED; SENTENCE ON COUNT TWO AFFIRMED; ENHANCED SENTENCE ON COUNT ONE VACATED; REMANDED WITH INSTRUCTIONS

. 338 So.2d 584 (La. 1976).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).