812 So.2d 120 (2002)
STATE of Louisiana
v.
Shaun A. BUTLER.
No. 01-KA-0907.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 2002.
*122 Paul D. Connick, District Attorney, Churita H. Hansell, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee.
Bruce G. Whittaker, New Orleans, LA, Attorney for Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant Shaun Butler was charged with armed robbery, a violation of LSA-R.S. 14:64. Butler was arraigned and pled not guilty. He filed a Motion to Suppress the Confession, Identification and Evidence which the trial court denied prior to trial.
Butler was tried before a jury of twelve and at the conclusion of trial, the jury returned a verdict of guilty of the lesser charge of first degree robbery, LSA-R.S. 14:64.1. Butler was sentenced to eight and one-half years at hard labor. The court suspended two years of the sentence, on condition that Butler obtain his General Educational Development (G.E.D.) degree while in prison. The court further ordered that, after his release from prison, Butler would be on active probation for five years.
Butler filed a Motion to Reconsider Sentence which was heard and denied. The court stated, "I'm going to reiterate the original sentence. It's eight-and-a-half years; two years suspended. And it's with hard labor without benefit of probation, parole, suspension of sentence for the first five years." The court did not indicate, when it initially imposed sentence, that Butler would be deprived of benefits during the first five years of the sentence.
The facts were developed at hearings on the motions to suppress and at trial. On the night of February 14, 2000, Bonnie Caillouet returned to her condominium in Audubon Trace in Jefferson, parking her car in the parking lot in front of her residence. As she exited the car and began to unload groceries from the back seat, Butler approached her and leaned against the side of her body. He told her, "Give me your purse. I have a gun and I'll shoot you."
Ms. Caillouet testified that she looked down and saw that Butler had a silver, cylindrical object in his hand. She did not know what the object was, but based on what Butler told her, she believed it was a gun. Butler grabbed the strap of the purse Ms. Caillouet was wearing over her shoulder. She struggled with him, attempting to hold on to her purse. She fell to the ground, and Butler fled the scene with her purse. Ms. Caillouet testified that he got away with all the items contained in the purse. She immediately had a neighbor call police. Deputy Tish Lasseigne responded to the call, and Ms. Caillouet provided the officer with a description of the perpetrator.
In the early morning hours of February 15, 2000, Deputy Nicholas Davidson of the Jefferson Parish Sheriff's Office was on routine patrol in the Second District on the Westbank. He saw a maroon Dodge automobile parked, partially hidden, between two dumpsters behind a bank. Davidson stopped to investigate. While the deputy was searching the area for the car's occupants, *123 Butler left the bank's automatic teller machine (ATM), and walked toward the parked car. The deputy called Butler to the police unit, and he complied. Davidson asked Butler why he was parked behind the building at that hour. Butler responded that he was apprehensive because the area was dark.
While Davidson was conversing with Butler, Deputy Tom Highler arrived at the scene. Highler recovered a Bank One ATM card that was lying in plain view behind one of the tires of Butler's car. The card bore the name Bonnie Caillouet. Butler denied that he possessed or had any knowledge of the card. Davidson called the bank card company, and learned that the card had been reported stolen hours earlier. He contacted Ms. Caillouet to tell her the card had been found. She described the robbery and the perpetrator, and Butler's appearance matched her description. The officers placed Butler under arrest. At trial, Ms. Caillouet identified the card as one of the items contained in her purse when it was stolen.
A deputy searched the inside of Butler's car, and found a T-shirt and a hat similar to those the victim described. At trial, the victim identified the hat as the one the robber had worn. The officers did not find a weapon in the car.
On February 15, 2000, Detective John Carroll conducted a taped interview with Butler, the audio recording of which was played for the jury at trial. The interview was transcribed, and the jury was allowed to view copies of the transcript. In the interview, in response to the detective's questioning, Butler admitted to having gone to the condominium complex the night before and having taken Ms. Caillouet's purse. He stated that he had a piece of pipe that looked like a gun. After the robbery, he drove to the Westbank. While crossing the Huey P. Long Bridge, he threw the weapon into the Mississippi River. He kept the Bank One ATM card and a small amount of cash he found in the bag, then disposed of the purse somewhere on the Westbank.
On March 27, 2000, Detective Carroll presented a photographic lineup to Ms. Caillouet at her place of employment. She immediately identified Butler as the man who had robbed her.
Butler testified at trial that, on February 14, 2000, he drove to the victim's condominium complex and parked his car in the back. His plan was to commit a robbery. He walked around until he saw Ms. Caillouet unloading groceries from her car. He approached her from behind, carrying a piece of iron. He intended to use the weapon to frighten her. He did not hold it in a manner calculated to make the victim believe it was a gun. He did not tell her he had a gun. He simply told her not to move. Butler grabbed the victim's purse, and she attempted to pull it away from him. After a brief struggle, he took the purse and fled the scene. Butler testified that he had never been arrested before, and that he believed he was under the influence of drugs at the time of the robbery.
On appeal, Butler asserts that it was error to deny the motion to suppress. Butler argues that Deputy Davidson had no legal basis to stop and question him, and further urges that the officer did not have probable cause to arrest him. Consequently, he asserts, his arrest was invalid and the statement he gave to Detective Carroll following his arrest was suppressible as "fruit of the poisonous tree."[1] Further, he urges that the abandoned ATM *124 card was illegally seized as having been a direct result of an unconstitutional seizure.
The Fourth Amendment to the United States Constitution and Article I, § V of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1 and by state and federal jurisprudence.[2]
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.[3]
The determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.[4] In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person."[5] An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop.[6]
The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[7] In determining whether the trial court's ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial.[8]
Deputy Nicholas Davidson testified that he has been with the Jefferson Parish Sheriffs Office since 1992. At 5:00 a.m. on February 15, 2000, he was on routine patrol on the Westbank of Jefferson Parish. He spotted a car parked partially hidden, between two dumpsters, behind a business that was closed. The officer testified that there is a bank in the mall whose ATM is open 24 hours. However, the car was not parked near the bank. Davidson knew of several recent burglaries that had occurred in that area. He began to look around for the person who had parked the car there.
Davidson spotted Butler inside the bank, apparently attempting to use the ATM. The officer did not have a clear view of what Butler was doing, as Butler's back was facing him. Davidson indicated that his suspicions were originally aroused because *125 the car was not parked in front of the bank, where ATM customers normally parked.
Apparently spotting Davidson, Butler exited the bank and walked toward his car. The officer hailed him and asked him to walk to the police unit. Davidson testified that his intention was to ask Butler for identification, and inquire into why he was parked behind the building at that hour. He also wanted to make sure that it was Butler's vehicle, and to check his identification. Butler told the officer he had parked in the back because it was dark, and he was apprehensive. He appeared nervous. Deputy Tom Highler arrived on at the scene shortly after Davidson began speaking to Butler. Highler spotted a bank card from the ground behind the left front tire of Butler's car. He retrieved it, and discovered it bore the name Bonnie Caillouet.
When asked about the card, Butler told the officers he knew nothing about it. Davidson determined that the card had not been lying on the ground for long, and could not have been there already as it was not dirty or damaged. The deputy called the bank card company and inquired about the recovered card, and learned the card had been reported stolen in a robbery several hours earlier. At that point, Davidson "detained" Butler and placed him in the back of the police vehicle. Davidson then spoke on the telephone to Ms. Caillouet, who described the robber to him. Butler's appearance matched her description, and he was transported to the detective bureau of the sheriff's office, where he was interviewed by Detective Carroll.
Deputy Davidson testified that he did not see or suspect Butler of any crime before he stopped him. The deputy did not advise Butler of his Miranda rights before he began questioning him. Butler argues that because the officer did not suspect a crime had been or was going to be committed, he did not have the reasonable suspicion required by LSA-C.Cr.P. art. 215.1 and Terry to stop and question him.
The Louisiana Supreme Court has articulated a three-tiered analysis of interactions between citizens and police under the Fourth Amendment:
At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Id.; State v. Britton, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Watson, 953 F.2d at 897 n. 1; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)(citing Terry, 392 U.S. at 27, 88 S.Ct. 1868); State v. Moreno, 619 So.2d 62, 65 (La.1993). See also La.Code Crim. Proc. art. 215.1(A), which provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is "insufficient to justify custodial interrogation even though the interrogation is investigative." Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

*126 At the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Watson, 953 F.2d at 897 n. 1; Moreno, 619 So.2d at 65. See also La. Code Crim. Proc. art. 213, which uses the phrase "reasonable cause." The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. See Terry, 392 U.S. at 22, 88 S.Ct. 1868; State v. Flowers, 441 So.2d 707, 712 (La.1983)(noting that a less intrusive stop does not require the same "probable cause" needed for an arrest).
An arrest is "the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." La.Code Crim. Proc. art. 201. See also Moreno, 619 So.2d at 65. Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue. State v. Thibodeaux, 414 So.2d 366 (La.1982).
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Allen, 682 So.2d at 719; Moreno, 619 So.2d at 65 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty. Allen, 682 So.2d at 719; State v. Simms, 571 So.2d 145, 148 (La.1990).[9]
Davidson's initial contact with Butler falls under the first tier discussed in Fisher. The officer testified that he called defendant to the police vehicle only to question him as to his identity, and as to why he was parked in back of the building. The officer, who had eight years of experience in police work, wished to check out a situation he considered suspicious. Davidson was acting in the routine course of his duties as a patrol officer. He was aware that burglaries had recently occurred in that area, and he found it odd that the car was not parked in front of the bank, where ATM customers normally park, but rather partially hidden between the dumpsters. Davidson did not call for a backup officer. Apparently, Deputy Highly happened upon the scene by chance, and discovered the card inadvertently.
Davidson did testify that once he had summoned Butler to his vehicle, he did not think that he would have allowed him to leave the area at that point, had Butler attempted to do so. Davidson further testified that he considered Butler to be "under detention" once he summoned him to the police vehicle. At that point, however, Butler was not physically or forcibly detained and there is no indication that he had been compelled to stay. The evidence shows that a reasonable person in defendant's position would have believed he was free to go.
The mere fact that police approach and address a person does not compel that individual to respond to the inquiries *127 or comply with the requests. Legally, nothing prevents him from choosing not to answer and leaving the scene. Despite the fact that unsolicited assistance, unasked-for conversation, and unrequested advice are not always welcome, the Constitution provides no protection against such everyday annoyances whether caused by a policeman or an ordinary citizen. Mere police questioning does not constitute a seizure.[10]
If a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen's right to be free from governmental interference, then such property may be lawfully seized and used against the citizen in a resulting prosecution.[11] Since Butler apparently discarded the card prior to any unlawful intrusion, it was legally seized and the court properly denied the motion to suppress that evidence.
Once Highly discovered the card next to Butler's vehicle, and the officers learned the card was stolen, the officers had a reasonable suspicion, supported by articulable facts, that a crime had been committed. The situation had reached the second tier in the Fisher analysis. Under Article 215.1A, the officers were then entitled to "briefly seize" Butler.
Reasonable suspicion ripened into probable cause for arrest when Davidson spoke to the victim and heard her description of the man who had robbed her. Not only did Butler match the description of the robber, but clothing matching Ms. Caillouet's description was found in defendant's car, and circumstances were such that it was reasonable to infer that Butler had the bank card in his possession. At that point, the officers were entitled to place him under arrest under LSA-C.Cr.P. art. 213.
Because Butler's arrest was legal, any evidence or statements taken afterward were not suppressible as "fruit of the poisonous tree." The trial court properly denied the motion to suppress the confession. This assignment of error has no merit.
The record was reviewed for errors patent.[12]
In so doing, we note that when the trial court denied Butler's Motion to Reconsider Sentence, he restated Butler's original sentence: "It's eight-and-a-half years; two years suspended." The court added at that time that the sentence would be served without benefit of parole, probation or, paradoxically, suspension of sentence, for the first five years. That provision was not in the original sentence, nor is it found in the commitment. Although LSA-C.Cr.P. art. 882 allows a trial court to amend an illegal sentence at any time, the judge did not state that the added provision was an amendment to the original sentence. On the contrary, the judge stated that he was reiterating defendant's original sentence. Further, no amended commitment is found in the record. Therefore the court's statement that defendant's sentence be served without benefits had no effect and was not an amended sentence.
*128 As a result, the only sentence imposed by the trial court is illegally lenient. LSA-R.S. 14:64.1(B) provides that whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence. As stated above, the trial court did not properly impose the sentence without benefit of parole, probation or suspension of sentence, as required by the first degree robbery statute. Had the trial court simply neglected to impose those restrictions, it appears that no action by this court or the trial court would be necessary.[13] However, the court affirmatively suspended a portion of Butler's sentence. Under R.S. 14:64.1(B), he was without authority to do so. In order to correct Butler's illegally lenient sentence under the provisions of Article 882, and the supreme court's findings in Williams, the case must be remanded to the trial court for re-sentencing in accordance with the provisions of LSA-R.S. 14:64.1.
Further, the trial court failed to advise defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required under LSA-C.Cr.P. art. 930.8. Accordingly, we remand the case to the district court and order it to properly inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 at re-sentencing.
For the foregoing reasons, Butler's conviction is affirmed. The matter is remanded to the trial court for re-sentencing in accordance with this opinion.
AFFIRMED; REMANDED.
NOTES
[1] Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62.
[3] State v. Duckett, 99-314, p. 5 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
[4] State v. Kalie, 96-2650, pp. 1-2 (La.9/19/97), 699 So.2d 879, 880, per curiam.
[5] State v. Huntley, 97-965, p. 2 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[6] State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133; State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98.
[7] State v. Flagg, supra.
[8] State v. Raines, 00-1941, p. 5 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639.
[9] State v. Fisher, 97-1133, pp. 5-6 (La.9/9/98), 720 So.2d 1179, 1183, (citing United States v. Watson, 953 F.2d 895, 897, n. 1 (5th Cir. 1992)).
[10] State v. Bacuetes XXXX-XXXX (La.App. 4th Cir.10/18/00), 772 So.2d 813, writ denied XXXX-XXXX (La.1/26/01), 781 So.2d 1257, citing State v. Haygood, 26,102 (La.App. 2 Cir. 8/17/94), 641 So.2d 1074, 1077, writ denied, 94-2373 (La.1/13/95), 648 So.2d 1337.
[11] State v. Tucker 626 So.2d 707, (La.1993); State v. Snavely 99-1223 (La.App. 5th Cir.4/12/00), 759 So.2d 950, writ denied XXXX-XXXX, (La.2/16/01), 785 So.2d 840.
[12] LSA C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[13] See State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.