822 So.2d 818 (2002)
STATE of Louisiana
v.
Michael FAIRLEY.
No. 02-KA-170.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, Assistant *819 District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The Jefferson Parish District Attorney filed a Bill of Information charging the defendant, Michael Fairley, with violating LSA-R.S. 40:967(A), possession with intent to distribute cocaine. In separate Bills of Information, the defendant was also charged with possession of cocaine, and battery of a police officer.[1] Defendant initially pled not guilty, but after the trial court denied his Motions to Suppress Evidence and to Quash the Bill of Information, defendant withdrew the pleas of not guilty and pled guilty as charged, reserving his right to appeal the denial of his motions pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
After accepting the defendant's guilty plea, the trial judge sentenced the defendant to 20 years of imprisonment at hard labor. At the same time, the trial judge sentenced the defendant to five years of imprisonment at hard labor for possession of cocaine and to six months in the parish prison for simple battery of a police officer. All three of the sentences were ordered to run concurrently with each other.
Also on the same day, the State filed a multiple offender Bill of Information alleging defendant to be a second felony offender. After being advised of his multiple offender rights, the defendant stipulated to the allegations therein. The trial judge vacated the 20-year sentence for possession with intent to distribute cocaine, and imposed a multiple offender sentence of 20 years of imprisonment at hard labor to be served concurrently with the previously imposed sentences. The trial court granted the defendant's Application for Post-Conviction Relief in which he sought reinstatement of his appeal rights.
On appeal, the defendant asserts the following Assignments of Error:
1. The trial court erred in failing to suppress the evidence.
2. Appellant requests, pursuant to La. C.Cr.P. art. 920, a review of the record for errors patent: Any error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

FACTS[2]
On the night of June 6, 1998, Deputy Randall Fernandez and his partner, both of the Jefferson Parish Sheriff's Office, East Bank Street Crimes Unit, were conducting surveillance on Monticello Avenue in Jefferson Parish. At the hearing, Deputy Fernandez explained that Monticello Avenue is between River Road and Jefferson Highway, near the Orleans Parish boundary. According to Deputy Fernandez, police officers routinely conduct surveillance in that area because of the "heavy, heavy volume of narcotics trafficking" in this particular area. Deputy Fernandez testified that he had personally made approximately 50 arrests in that area.
At approximately midnight, the officers observed a black male on a bicycle flag *820 down a vehicle and lean into the vehicle. Deputy Fernandez stated that they believed the male, later identified as defendant, was conducting a narcotics transaction. Deputy Fernandez's partner, who was driving the officers' unmarked police car, pulled up behind the vehicle, which drove off at that point. Defendant began pedaling away toward New Orleans. The officers followed the defendant, and Deputy Fernandez saw the defendant discard an object. When Deputy Fernandez retrieved the object, he discovered that there were four individual plastic bags that appeared to contain crack cocaine inside of a single plastic bag. The officers identified themselves as the police through their public address system, ordered the defendant to stop, but defendant continued pedaling. The officers also notified other units of the defendant's location. Defendant ultimately lost control of his bicycle and was arrested shortly thereafter.

ASSIGNMENT OF ERROR NUMBER ONE[3]
The defendant contends that the cocaine he discarded should have been suppressed because it was the product of an unlawful investigatory stop.
The Fourth Amendment and Article I, § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed, or is about to commit a crime is recognized by State and federal jurisprudence.[4]
When property is abandoned without any prior unlawful intrusion into a person's right to be free from governmental interference, that property may be lawfully seized.[5] And, an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to a police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Louisiana Supreme Court adopted the Hodari D. definition of an "actual stop" in State v. Tucker, 626 So.2d 707, 712 (La. 1993), opinion reinstated on reh'g, 626 So.2d 720 (1993).
The record in this case clearly demonstrates that the police did not actually stop the defendant until after he had abandoned the cocaine. Thus, the police did not violate defendant's Fourth Amendment right to be free from unlawful seizures by following him in an unmarked vehicle and retrieving what he discarded.
But because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, the Louisiana Supreme Court in State v. Tucker, supra, a "seizure" also occurs when an "actual stop" of the individual is "imminent." Although defendant does not mention State v. Tucker or raise the issue of an actual imminent stop in his appellate brief, the crux of this assignment is whether an unlawful actual imminent stop triggered *821 the defendant's abandonment of the cocaine.
In Tucker, officers were conducting a drug sweep, which involved 10 to 12 marked police cars carrying 20 to 30 officers. As two officers approached a building, they observed the defendant and another man huddled together. When these men saw the police, the men began to walk away. The officers stopped and ordered the two men to stop and lay down. One of the men obeyed, but the defendant moved toward the rear of the building and tossed away a bag containing marijuana. The defendant then lay on the ground. State v. Tucker, 626 So.2d at 712.
The Louisiana Supreme Court held that Tucker was not actually stopped when he abandoned the marijuana because he did not submit to the show of police authority when he was ordered to halt and lay on the ground. Rather, he "continued freely in his movements, discarding a bag containing contraband." State v. Tucker, 626 So.2d at 713. The Court further explained that "[i]t is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.'" Id. at 712. (Emphasis in the original).
The Tucker court listed several factors to consider in determining whether an actual stop is imminent, which this Court enumerated in State v. Riggins, 97-1194 (La.App. 5 Cir. 8/25/98), 718 So.2d 569, 571, writ denied, 98-2520 (La.1/15/99), 736 So.2d 206:
1. The proximity of the police in relation to the defendant at the outset of the encounter;
2. Whether the individual has been surrounded by the police;
3. Whether the police approached the individual with their weapons drawn;
4. Whether the police and/or the individual are on foot or in motorized vehicles during the encounter;
5. The location and characteristics of the area where the encounter takes place;
6. The number of police officers involved in the encounter.
This year, the Louisiana Supreme Court has reversed cases in which the lower courts held that an actual imminent stop occurred before the defendant discarded contraband. In State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647, the trial court held that an actual imminent stop had occurred when two police officers in an unmarked car pulled up four feet from where the defendant was standing. In concluding that an actual stop was not imminent, the Johnson court focused on the fact that the officers had not "attempted to assert an official authority over him by ordering or signaling him to stop" before he threw down the contraband. State v. Johnson, 806 So.2d at 648.
Likewise, in State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124, 2002 La. LEXIS 712, the Louisiana Supreme Court held that an actual stop was not imminent when defendant dropped crack cocaine as two officers exited their unmarked police car, approached defendant, and identified themselves as the police. The Court recognized that, even though the officers had positioned themselves in such a manner that "intentionally left respondent with no easy route of escape," the officers had not "chased" the defendant or otherwise communicated their intent to stop him. Id., 00-3083, p. 2, 824 So.2d at 1125 (La.3/15/02). Further, in both cases, the court recognized that tips by informants prompted the officers to approach the defendant with the subjective intent to stop *822 the defendant, but nonetheless held that an actual stop was not imminent. State v. Johnson, 806 So.2d at 647-648; State v. Jackson, 824 So.2d at 1125-26, 2002 La. Lexis 712, pp. 1-3 (La.3/15/02).
In the present case, it does not appear that an actual stop was imminent. The two officers were approximately 100 feet from the defendant when they observed the defendant lean into the other vehicle. The defendant was not surrounded by the police. Rather, only two officers in an unmarked car approached the defendant as he rode away on his bicycle. Further, as in State v. Johnson and State v. Jackson, defendant discarded the contraband before the officers identified themselves as the police and ordered the defendant to stop. Nothing in the record indicates that the police came upon the defendant with such force that regardless of his attempts to flee, an actual stop was virtually certain. Since the defendant discarded the cocaine prior to any unlawful intrusion by the police, the cocaine was lawfully seized.
The trial judge concluded that, once the defendant discarded the cocaine, there was "enough to warrant effecting an arrest" and denied the Motion to Suppress. Based on the foregoing discussion the trial judge did not abuse his discretion in denying the Motion to Suppress evidence.

ASSIGNMENT OF ERROR NUMBER TWO (Error patent)
As is customarily done, the record was reviewed for errors patent.[6]
It is noted that, although the commitment indicates that the defendant was advised that he had two years from the date his sentence and conviction become final within which to file Post-Conviction Relief, the transcript reflects that the judge failed to indicate when the period began to run.[7] Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.[8]
When the district court fails to completely inform a defendant of the prescriptive period for filing Post-Conviction Relief, this Court has remanded the matter for the district court to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 241. Accordingly, accordingly, we remand with instructions for the trial court to inform the defendant fully of the provisions of LSA-C.Cr.P. art. 930.8.
Accordingly, the defendant's conviction and sentence are affirmed. The case is remanded to the trial court with the above instructions.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Michael Fairley, 02-KA-168, the case in which defendant was charged with possession of cocaine, is a companion to the instant appeal.
[2] This factual statement is derived from the hearing on the Motion to Suppress held on September 27, 2000.
[3] It is noted that in pleading guilty, the defendant reserved the right to challenge the trial court's denial of his Motion to Suppress and the Motion to Quash the Bill of Information. However, defendant has only briefed the issue of the trial court's denial of the Motion to Suppress, not the trial court's denial of his Motion to Quash.
[4] See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Keller, 403 So.2d 693, 697 (La.1981).
[5] State v. Belton, 441 So.2d 1195, 1199 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 241, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
[6] LSA-C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[7] It is also noted that the Waiver of Rights form indicates that there is a two-year period to file Post-Conviction Relief, but it likewise fails to state when the period commences.
[8] State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Haynes, 96-84 (La.App. 5 Cir. 6/25/96), 676 So.2d 1120, 1123.