977 So.2d 1015 (2008)
STATE of Louisiana
v.
Joseph L. PARKS.
No. 07-KA-655.
Court of Appeal of Louisiana, Fifth Circuit.
January 22, 2008.
*1019 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, Counsel for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Abita Springs, Louisiana, Counsel for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
Defendant, Joseph L. Parks, appeals his conviction for possession of cocaine, a violation of LSA-R.S. 40:967 C. On appeal, in his original brief, defendant argues that the trial court erred in denying his Motion to Suppress evidence; that the trial court erred in denying his Motion to Suppress Statements. In a supplemental brief, defendant contends that the evidence was insufficient to support the verdict because there were discrepancies regarding the weight of the crack cocaine and the description of the cigarette box. Further, he also argues that the trial court erred in admitting into evidence the cocaine and the cigarette box, and that his counsel was ineffective for failing to object to this evidence's admission. After thorough consideration, we affirm.
PROCEDURAL HISTORY
On September 2, 2004, the Jefferson Parish District Attorney filed a Bill of Information charging defendant, Joseph L. Parks, with possession of cocaine in violation of LSA-R.S. 40:967 C. Defendant was arraigned and pled not guilty. The trial court denied defendant's Motions to Suppress the Evidence and Statements after two hearings. On May 2nd and 3rd, 2006, the case was tried before a six-person jury, which found defendant guilty as charged.
The trial court denied defendant's Motion for New Trial and Motion for Post Verdict Judgment of Acquittal on June 29, 2006. On that same date, defendant waived sentencing delays, and the trial court sentenced him to imprisonment at hard labor for five years to run concurrently with the sentence in case No. 04-5932, and with any other sentence defendant was already serving. Also on that date, the State filed a multiple bill alleging defendant to be a fourth felony offender, and defendant denied the allegations of that multiple bill. On February 12, 2007, the State filed an amended multiple bill alleging defendant to be a third felony offender, and defendant admitted the allegations of that multiple bill. On that same date, the trial court vacated the original sentence and resentenced defendant to imprisonment at hard labor for 40 months without benefit of probation, suspension of sentence, or good time, to run concurrently with any other sentence defendant was already serving. Defendant filed a timely Motion for Appeal that was granted.
FACTS
Detective Sean Cursain of the Jefferson Parish Sheriff's Office (JPSO) testified at trial that, on August 24, 2004, at 1:47 p.m., he and Deputy Paul Sperandeo were patrolling the area of Central Avenue in Jefferson Parish, a high crime area, because they had received increased complaints from citizens of narcotics activity and prostitution. Detective Cursain, who was driving an unmarked unit, but wearing a JPSO uniform, noticed a male, later identified as defendant, and a female, later identified as Tara Lee, leaving the apartment complex located at the intersection of Central and Morris.
*1020 Detective Cursain pulled his unit over in order to ask the two individuals whether they lived in the area, and if so, whether they had any knowledge of criminal activity. He and Deputy Sperandeo subsequently exited their vehicle, and the two individuals, who were walking toward the officers, observed their presence. As soon as Detective Cursain exited the vehicle, he saw defendant stop walking momentarily, look around, and then continue his forward motion. Detective Cursain testified that defendant was obviously surprised to see police presence in the neighborhood.
Detective Cursain testified that after defendant started walking again, he reached into his back pocket with his right hand and dropped an object to the ground. The object caught Detective Cursain's eye because it was white. Based on his experience, Detective Cursain thought that defendant's actions were consistent with someone trying to discard contraband upon seeing the police. Detective Cursain then alerted Deputy Sperandeo to detain the individuals because defendant had thrown something on the ground.
At that point, Deputy Sperandeo detained the two individuals, and Detective Cursain retrieved the object, a cigarette box.[1] When he looked inside the box, he found a crack pipe containing what appeared to be a crack cocaine rock. Detective Cursain field tested the substance, and the test was positive for cocaine. Afterwards, Detective Cursain approached defendant. Deputy Sperandeo told Detective Cursain that he could go ahead and talk to defendant, because he had already advised defendant of his Miranda[2] rights.
Detective Cursain asked defendant if he resided in that area, and defendant said "no." He asked defendant where he had obtained the crack cocaine, and defendant told him "New Orleans." Detective Cursain also asked defendant if he knew anybody in that area, and defendant said "no." When he asked defendant how he got there, defendant responded that his wife had dropped him off. Additionally, Detective Cursain asked defendant the identity of the female who was with him, but defendant could not tell him her name. Detective Cursain noted that he never had to pull out his weapon during this incident.
Deputy Sperandeo also testified at trial, and his testimony largely corroborated that of Detective Cursain.
Andrea Travis, a qualified expert in the field of forensic chemistry, testified that the off-white rock-like substance that was recovered in this case tested positive for cocaine.
After the State rested its case, the defense called Dawn Parks, defendant's wife, as a witness. Parks testified that in August of 2004, she told defendant to stay with his sister in St. Rose because she and defendant had an argument. Parks asserted that Central Avenue was where defendant was sometimes picked up and dropped off for work. She claimed that defendant's friend, "RJ," lived somewhere off of Central. She testified that she never dropped defendant off at the corner of Central and Morris. She stated that defendant was working for a roofing company in New Orleans in August of 2004. Parks also testified that defendant smoked Camel cigarettes.
Tara Lee testified that she used to live at the apartment complex on the corner of *1021 Central and Morris.[3] She claimed that she did not know defendant and was not with him on August 24, 2004, but that she had been stopped by the police many times in that area. She also stated that she smoked Marlboro cigarettes.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in denying his Motion to Suppress the evidence. He contends that the cigarette box and its contents should have been suppressed because, if he did abandon the cigarette box, he did so only because an unlawful actual imminent stop by the officers triggered his action.
The State responds that the trial court did not err in its ruling. It argues that defendant discarded the cigarette box prior to the officers' approaching him. It further argues that the officers' actions did not constitute an imminent stop of defendant, as they were merely approaching him to ask if he was willing to answer some questions.
Defendant filed two motions to suppress the evidence arguing that the evidence to be used against him was not seized or obtained incidental to a valid search warrant, or under circumstances excusing the absence of a warrant, and that none of the exceptions to the warrant requirements were applicable. At the hearing on those motions, Detective Cursain testified regarding the circumstances surrounding defendant's arrest. A review of his testimony at that hearing reveals that it was virtually the same as his trial testimony.
After hearing testimony at that suppression hearing, the trial court denied the Motion to Suppress the evidence.
The Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. The police may not, therefore, make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct. State v. Tucker, 626 So.2d 707, 710 (La. 1993). Additionally, while the police may briefly detain and interrogate an individual in a public place, they may make such an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity.[4]
These constitutional protections, however, do not proscribe all interaction between the police and other individuals. Police officers "`have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime.'"[5] The police do not need probable cause to arrest or reasonable cause to detain an individual each time they approach a citizen.[6] As long as the person approached by a law enforcement officer remains free to disregard the encounter and walk away, the foregoing constitutional provisions are not implicated.[7]
*1022 In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. Consequently, property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution.[8] If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution.[9] In this latter situation, the citizen has no reasonable expectation of privacy and there is no violation of his custodial rights.[10] Because these rules of inadmissibility are intended to protect individuals from unwarranted, forcible governmental interference, "`it is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property.'"[11]
In Tucker, the Louisiana Supreme Court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D.,[12] held that an individual has been "actually stopped," i.e., seized, for purposes of La. Const, art. 1, § 5 when he submits to a police show of authority or when he is physically contacted by the police. Additionally, the Louisiana Supreme Court determined that even when an actual stop has not been effectuated, our constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain."[13]
Factors to consider in determining whether an actual stop is imminent include the following:
(1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.[14]
The State has the burden, in a hearing on a Motion to Suppress evidence, of establishing the admissibility of evidence seized without a warrant. LSA.C.Cr.P. art. 703(D). The trial court's denial of a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[15] In determining whether the trial court's ruling on a defendant's Motion to Suppress is correct, the appellate court is not limited to the evidence adduced at the suppression *1023 hearing; it may also consider the evidence presented at trial.[16]
In State v. Suavely,[17] two officers went to a residence based on an anonymous tip of a crack cocaine delivery. When the officers arrived, they observed the defendant exit the residence, then proceed to a vehicle. When the defendant observed the two deputies, he became nervous, turned around, dropped a clear plastic bag containing cocaine to the ground, and then tried to walk back towards the residence. The deputy approached the defendant, and after a brief struggle, he and his partner placed the defendant under arrest. This Court found that the defendant had not been actually stopped at the time he discarded the plastic bag, which contained cocaine. Nor did it find that an actual stop was imminent, as the defendant was not surrounded by the police, only two officers approached the defendant to investigate, the officers did not have their guns drawn, and the area was one of high crime. This Court concluded that, since the defendant discarded the cocaine prior to any unlawful intrusion, the narcotics were lawfully seized. Id.
In State v. Fairley,[18] this Court noted that the Louisiana Supreme Court had reversed cases in which the lower courts held that an actual imminent stop occurred before the defendant discarded contraband:
In State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647, the trial court held that an actual imminent stop had occurred when two police officers in an unmarked car pulled up four feet from where the defendant was standing. In concluding that an actual stop was not imminent, the Johnson court focused on the fact that the officers had not "attempted to assert an official authority over him by ordering or signaling him to stop" before he threw down the contraband. State v. Johnson, 806 So.2d at 648.
Likewise, in State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124, 2002 La. LEXIS 712, the Louisiana Supreme Court held that an actual stop was not imminent when defendant dropped crack cocaine as two officers exited their unmarked police car, approached defendant, and identified themselves as the police. The Court recognized that, even though the officers had positioned themselves in such a manner that "intentionally left respondent with no easy route of escape," the officers had not "chased" the defendant or otherwise communicated their intent to stop him. Id. 00-3083, p. 2, 824 So.2d at 1125 (La.3/15/02). Further, in both cases, the court recognized that tips by informants prompted the officers to approach the defendant with the subjective intent to stop the defendant, but nonetheless held that an actual stop was not imminent. State v. Johnson, 806 So.2d at 647-648; State v. Jackson, 824 So.2d at 1125-26, 2002 La. Lexis 712, pp. 1-3 (La.3/15/02).
In the instant case, defendant discarded the cigarette box containing cocaine after the officers exited their vehicle, but before they approached him. As such, defendant was not actually stopped at the time he discarded the narcotics. We find that an actual stop was not imminent, as this Court did in Suavely, because defendant was not surrounded by the police, *1024 only two officers approached defendant to question him regarding criminal activity in the area, Detective Cursain did not have his gun drawn, there was no evidence that Deputy Sperandeo had his gun drawn, and the area was one of high crime.
Additionally, the officers did not attempt to assert "any official authority over [defendant] by ordering or signaling defendant to stop" before he threw down the contraband.[19] Also, as was stated previously, police officers "`have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime.'"[20] Since defendant discarded the cocaine prior to any unlawful intrusion, the narcotics were lawfully seized. The trial court did not err in denying the Motion to Suppress Evidence.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial court erred in denying his Motion to Suppress the statements. He argues that the oral inculpatory statements should have been suppressed, because of the conflicting testimony of the officers regarding advising defendant of his Miranda rights, defendant's waiver of those rights, and the content of defendant's statements. He further argues that there was no evidence presented that showed defendant knowingly and intelligently waived his rights. He notes that the statements were not mentioned in the computer generated report made at the scene nor in the probable cause affidavit, and that no written waiver of rights form was completed.
The State responds that the trial court did not err in its ruling. It argues that Deputy Sperandeo advised defendant of his rights at the scene, and that defendant freely and voluntarily waived those rights. It further argues that the statements were not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
Deputy Sperandeo testified at the suppression hearing that Detective Cursain retrieved the cigarette box containing the crack cocaine and informed him of such. Afterwards, Deputy Sperandeo advised defendant of his Miranda rights as he was handcuffing him. Deputy Sperandeo further testified that, as he was advising defendant of his rights, defendant consistently shook his head in an affirmative manner. After he advised defendant of all of his rights, he asked defendant if he understood his rights, and defendant said, "Yes." Deputy Sperandeo indicated that defendant's subsequent statements were made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. He also indicated that defendant did not appear to be under the influence of an intoxicating substance, nor did he appear to have a mental defect. Deputy Sperandeo's trial testimony was very similar to his testimony at the suppression hearing.
Detective Cursain also testified at the suppression hearing and at trial; however, he had fewer details to provide because he did not advise defendant of his Miranda rights. The record reflects that Detective Cursain conducted the interview of defendant after Deputy Sperandeo advised defendant of his rights. The record further reflects that the officers' testimony at trial regarding the substance of defendant's statements was virtually the same.[21] After *1025 hearing testimony at that suppression hearing, the trial court denied the Motion to Suppress the statements.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises.[22] Whether a defendant's purported waiver of Miranda rights was voluntary is determined by the totality of the circumstances.[23]
The lack of a signed waiver of rights form does not, by itself, require the suppression of a defendant's statement.[24] In deciding the admissibility of a statement, the trial judge must consider the totality of the circumstances.[25] Further, the trial judge's decision in this regard is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence.[26]
In the instant case, the testimony of the officers at the suppression hearing and at trial reflects that defendant was advised of his Miranda rights and then waived them. The testimony also indicates that defendant's statements were made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. Additionally, there are no major differences between the officers' testimony at trial and at the suppression hearing regarding the giving of the Miranda rights, defendant's waiver of those rights, and the content of defendant's statements. As such, the trial judge did not err in denying defendant's Motion to Suppress the statements.
ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the evidence was insufficient to support the verdict because there were unexplained and significant discrepancies regarding the weight of the crack cocaine and the description of the cigarette box.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La. 1984).
Defendant was convicted of possession of cocaine, which required the State to prove that he was in possession of the cocaine and that he knowingly possessed it. LSA-R.S. 40:967(C); State v. Robinson, 04-964, p. 5 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1121.
In the instant case, the evidence, viewed in the light most favorable to the prosecution *1026 was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant was guilty of possession of cocaine. Detective Cursain testified that he observed defendant drop an object on the ground. When the detective retrieved it, he saw that it was a cigarette box containing a crack pipe. Detective Cursain also saw a crack cocaine rock inside the crack pipe. The field test performed by Detective Cursain was positive for the presence of cocaine. After defendant was advised of his rights, defendant admitted to Detective Cursain that he had obtained the crack cocaine in New Orleans.
Defendant is correct in that the Drug Evidence Report and the Scientific Analysis Report show two different weights for the crack cocaine rock. The Drug Evidence Report prepared by Detective Cursain indicates that the approximate "gross [quantity]" of the crack cocaine rock was .3 grams. (Defense Exhibit 1) The JPSO Crime Laboratory Scientific Analysis Report reflects that the cocaine had an approximate "net weight" of .16 grams. (State's Exhibit 2). Those exhibits were published to the jury and, therefore, the jury was aware of the discrepancy when they returned the guilty verdict. Although there was no testimony explaining the discrepancy, the jury may have reasonably assumed that the weights were different because one was a "gross [quantity]"[27] and the other a "net weight."[28] The jury may have also reasonably assumed that the lab scale was more sensitive than the officer's scale, or that Travis or Detective Cursain had simply made a mistake when weighing the small amount of cocaine.
Furthermore, the jury was also aware of the discrepancy regarding the three different descriptions of the cigarette box. They heard the testimony and obviously found Detective Cursain's explanation for the discrepancy credible. At trial, it was shown that Deputy Sperandeo had logged the cigarette box into evidence as an "Ultra Brand" cigarette box. The Exhibit Index in the record indicates that State's Exhibit 3 was a "cigarette box with crack pipe." The record reflects that State's Exhibit 3 was admitted into evidence without objection.
Detective Cursain testified that, when he prepared the probable cause affidavit (PCA), he mistakenly identified the "object" he recovered as a "Marlboro" cigarette box. He attributed his mistake to the fact that he did not have the cigarette box with him when he prepared the PCA, but had left it secured in his car, after having removed to crack pipe in order to weigh the rock of cocaine.
Detective Cursain also attributed his mistake to the fact that he was not a smoker and, therefore, had never heard of "Ultra Buy" cigarettes. Detective Cursain testified that, once he realized his mistake in the PCA, he corrected it in the police report.[29] He stated that he had also advised the court of his mistake during prior motion hearings.
The trier of fact can accept or reject, in whole or in part, the testimony of any witness.[30] It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt.[31]
*1027 We find the State proved the essential elements of the crime beyond a reasonable doubt under the Jackson standard.
ASSIGNMENTS OF ERROR FOUR AND FIVE[32]
Defendant argues that the trial court erred by admitting the cocaine into evidence because the incomplete chain of custody did not account for the weight discrepancy. Defendant also argues that the trial court erred by admitting the cigarette box into evidence because it did not match either the description in the probable cause affidavit or in the narrative report. He admits that his trial counsel did not object to their introduction into evidence at trial and, therefore, he contends that his counsel was ineffective for failing to do so.
Defendant is correct in that his trial counsel did not object to the introduction of the cocaine and the cigarette box into evidence. Additionally, the defense made no objections or arguments about an incomplete chain of custody. Under LSC.C.Cr.P. art. 841, a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure ah error. State v. Herrod, 412 So.2d 564, 566 (La.1982). Because defendant has asserted in Assignment of Error Number Five that he did not receive effective assistance of counsel, the panel can consider the issue despite the lack of objection.[33]
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In order to show ineffective assistance of counsel, the defendant must demonstrate that 1) his attorney's performance was deficient, and 2) he was prejudiced by the deficiency.[34] An error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable."[35] In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.[36]
A claim for ineffective assistance of counsel is most appropriately addressed through an Application for Post-Conviction Relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal.[37] When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by Assignment of Error on appeal, it may be addressed in the interest of judicial economy.[38] In the instant case, the record contains sufficient evidence to fully explore defendant's claim of ineffective assistance of counsel.
Before it can be admitted at trial, demonstrative evidence must be *1028 properly identified. LSA-C.E. art. 901. A sufficient foundation for the admission of evidence is established when the evidence as a whole shows it is more probable than not that the object is one connected with the crime charged.[39] The identification can be visual, through testimony.[40] The identification can also be accomplished through chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence.[41] The evidence as to custody need not eliminate all possibilities that an object has been altered.[42] It is sufficient if the evidence shows it is more likely than not that the object is one connected with the case.[43]
At trial, Detective Cursain identified State's Exhibit 3 as the cigarette box containing the crack pipe. State's Exhibit 3 was admitted into evidence without objection. The prosecutor subsequently showed Detective Cursain State's Exhibit 1 and asked him if he recognized it. Detective Cursain testified that he recognized it to be a piece of "what appears to be crack cocaine. It's consistent with crack cocaine." The prosecutor then asked, "And when you pulled the crack cocaine from this crack pipe . . . you submitted it to the crime lab?" Detective Cursain responded affirmatively. The detective also explained how he submitted the cocaine for transport to the crime lab.
Andrea Travis, a forensic scientist employed by the JPSO, identified State's Exhibit 1 as the evidence bag containing one off-white rock-like object that was given to her in connection with this case. State's Exhibit 1 was admitted into evidence without objection. Travis also described in detail the procedures by which the lab received and handled evidence in general. She identified Defense Exhibit 1, the Drug Evidence Report, as an "incomplete" chain of custody that was submitted to her in this case.
The testimony shows that Detective Cursain positively identified the cigarette box and the crack pipe. Although he did not specifically identify the crack cocaine rock as the one he pulled out of the crack pipe, that fact can be inferred from his testimony. As such, a rational trier of fact could have found beyond a reasonable doubt that the State established a sufficient foundation for the admission of the cigarette box and the cocaine, as the evidence as a whole shows it is more probable than not that those objects were the ones connected with the crime charged.
At trial, Detective Cursain explained how he collected and transported the cocaine to the lab for testing, and Travis detailed the procedures by which the lab received and handled evidence in general. However, no witness positively traced the location of the evidence in question from the time Detective Cursain placed it in the locked evidence box until the trial. Nevertheless, once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than the admissibility.[44] Ultimately, a *1029 chain of custody is a factual matter for determination by the jury.[45]
Although defense counsel probably should have questioned Travis regarding the incomplete chain of custody and the weight discrepancy of the cocaine, defendant has failed to show how the outcome of the trial would have been different but for his attorney's actions. The evidence showed that Detective Cursain observed defendant drop a cigarette box containing crack cocaine, and defendant admitted that he purchased the crack cocaine in New Orleans.
Defendant asserts that he is, at least, entitled to an evidentiary hearing to determine if the chain of custody can be established or to otherwise account for the discrepancies as was done in State v. Francis.[46] However, based on the above analysis, an evidentiary hearing is unnecessary. We find that defendant did not receive ineffective assistance of counsel.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent.[47] The review reveals errors patent in this case.
The transcript reflects that the trial judge correctly imposed the enhanced sentence without benefit of probation or suspension of sentence; however, the commitment indicates that the sentence was to be served without benefit of probation or parole. LSA-R.S. 15:529.1 G. The transcript prevails.[48] Therefore, we remand and order the trial court to correct the commitment to conform to the transcript.[49]
Second, the trial judge erred in restricting "good time" benefits when imposing the enhanced sentence. In the instant case, the transcript and commitment reflect the trial judge denied "good time" eligibility when imposing the enhanced sentence As such, we amend defendant's sentence to vacate the prohibition on "good time" eligibility and remand the matter for the district court to make an entry in the minutes reflecting this change, as per State v. Sam.[50]
The trial judge shall direct the Clerk of Court to transmit the revised commitment to the Secretary of the Department of Corrections in the same manner as the original commitment was transmitted and the Department of Corrections is instructed to provide the defendant with a copy of the revised commitment.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Detective Cursain initially thought that the cigarette box was Marlboro; however, it was later determined that the box was either "Ultra Brand" or "Ultra Buy."
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Deputy Sperandeo testified that Tara Lee was the name of the female who was with defendant at the time of the incident.
[4] LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tucker, 626 So.2d at 710.
[5] State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 So.2d 647, 648 (per curiam) (quoting State v. Duplessis, 391 So.2d 1116, 1117 (La. 1980)).
[6] State v. Belton, 441 So.2d 1195, 1199 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[7] Tucker, 626 So.2d at 710; Belton, 441 So.2d at 1199.
[8] Tucker, 626 So.2d at 710.
[9] Id.
[10] Id.
[11] Id. at 710-11 (quoting Belton, 441 So.2d at 1199) (emphasis in original).
[12] 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
[13] Tucker, 626 So.2d at 712 (emphasis in original).
[14] State v. Tucker, 626 So.2d at 712-13
[15] State v. Butler, 01-907, pp. 6-7 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
[16] Butler, 01-907 at p. 7, 812 So.2d at 124.
[17] 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840.
[18] 02-170, p. 7 (La.App. 5 Cir. 6/26/02), 822 So.2d 818, 821-22, writ denied, 03-1427 (La.4/23/04), 870 So.2d 290
[19] Johnson, 01-2436 at p. 3, 806 So.2d at 648.
[20] Id.
[21] It is noted that the substance of those statements was not elicited at the suppression hearing.
[22] LSA-R.S. 15:451; State v. Franklin, 03-287. p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d817.
[23] State v. Pugh, 02-171, p. 19 (La.App. 5 Cir. 10/16/02), 831 So.2d 341, 352.
[24] State v. Normand, 98-1312, p. 7 (La.App. 5 Cir. 5/19/99), 735 So.2d 901, 904, writ denied, 99-1687 (La. 11/12/99), 749 So.2d 653.
[25] Normand, 98-1312 at p. 7, 735 So.2d at 904.
[26] Normand, 98-1312 at p. 7, 735 So.2d at 905.
[27] (Defense Exhibit 1)
[28] (State's Exhibit 2).
[29] The police report was not introduced into evidence.
[30] State v. Baker, 01-1397, pp. 4-5 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365.
[31] State v. Gentras, 98-1095, p. 9 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La. 10/15/99), 748 So.2d 464.
[32] These two assignments are addressed together because they are related.
[33] See State v. Ratcliff, 416 So.2d 528, 532-33 (La.1982).
[34] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055.
[35] Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2064.
[36] Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
[37] State v. Mclntyre, 97-876, p. 10 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753.
[38] State v. Peart, 621 So.2d 780, 787 (La. 1993); State v. Mclntyre, 97-876 at pp. 10-11, 708 So.2d at 1075.
[39] State v. Arita, 04-39, p. 9 (La.App. 5 Cir. 3/1/05), 900 So.2d 37, 43, writ denied, 05-843 (La. 11/29/05), 916 So.2d 165.
[40] Id.
[41] State v. Cosey, 97-2020, p. 3 (La. 11/28/00), 779 So.2d 675, 678, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001); State v. Brooks, 01-864, p. 9 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1099.
[42] Arita, 04-39 at p. 10, 900 So.2d at 43.
[43] Brooks, 01-864 at p. 9, 807 So.2d at 1099.
[44] Arita, 04-39 at p. 10, 900 So.2d at 43.
[45] State v. Addison, 03-1421, p. 25 (La.App. 5 Cir. 3/30/04), 871 So.2d 536, 551, writ denied, 04-1291 (La. 10/29/04), 885 So.2d 584.
[46] 345 So.2d 1120 (La. 1977), cert. denied, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977).
[47] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir. 1990).
[48] State v. Lynch, 441 So.2d 732 (La. 1983).
[49] State v. Allen, 03-1205, p. 6 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 881.
[50] 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510.