JUDE G. GRAVOIS, Judge.
 

 | ¡¡Defendant, Jerman Jones, appeals his conviction of possession of heroin in violation of LSA-R.S. 40:966 C, and possession
 
 *1101
 
 of cocaine in violation of LSA-R.S. 40:967 C. On appeal, defendant argues that the evidence was insufficient to establish beyond a reasonable doubt that he possessed cocaine and heroin. After thoroughly reviewing the record and the law, we find no merit to this assignment of error and accordingly affirm defendant’s conviction.
 

 PROCEDURAL HISTORY
 

 The Jefferson Parish District Attorney filed a two-count bill of information charging defendant, Jerman Jones, with possession of heroin in violation of LSA-R.S. 40:966 C, and possession of cocaine in violation of LSA-R.S. 40:967 C. Defendant pled not guilty at arraignment. Defendant was tried by a 12-person jury on March 3, 4, and 5, 2009. The jury returned verdicts of guilty as charged on both counts.
 

 |3On March 16, 2009, the trial court sentenced defendant to ten years at hard labor on Count 1, possession of heroin. On Count 2, possession of cocaine, the trial court sentenced defendant to five years at hard labor. The State noticed its intention to file a habitual offender bill of information in this case, but the habitual offender proceedings are not in the record and are not part of this appeal. Defendant timely filed a motion for appeal, which the trial court granted on March 30, 2009.
 

 FACTS
 

 Deputy Michael Borne of the Jefferson Parish Sheriffs Office testified that he was on patrol duty in Marrero in the early morning hours of December 4, 2008. He was dressed in uniform and was driving a marked patrol car. Just after midnight, Deputy Borne was in the 6200 block of the Westbank Expressway, a high crime area known for narcotics activity. He saw two black men, one of whom was defendant, standing in front of the Brass Rail Lounge. Deputy Borne testified defendant was making hand motions. He appeared to be flagging down motorists in order to sell drugs.
 

 Deputy Borne testified that he stopped in front of the bar and exited his car. Defendant started to walk away and Deputy Borne called out to him. Deputy Borne then saw defendant remove a red glove he was wearing and drop it on the ground. The officer instructed defendant two or three times to walk to his patrol car and defendant finally complied. Deputy Cynthia Phelps, who arrived at the scene in another patrol car, secured defendant while Deputy Borne retrieved the discarded glove. Deputy Borne testified he found crack cocaine inside the glove.
 

 Deputy Borne testified that he performed a pat-down search of defendant’s clothing for his own safety, and in doing so, recovered a syringe from defendant’s 14pocket. During the pat-down search, defendant hit Deputy Borne in the chest and fled on foot. Deputy Borne left the evidence with Deputy Phelps and pursued defendant. Deputy Borne reported the chase over the police radio and additional officers responded to the area. Deputy Borne caught up with defendant and the two engaged in a struggle. Defendant attempted to flee again and Deputy Borne tasered him. At that point Deputy Borne was able to subdue defendant and place him under arrest.
 

 Deputy Borne transported defendant to the Jefferson Parish Correctional Center in his patrol car. Deputy Borne collected defendant’s property from him as part of the booking process. A small foil packet fell out of defendant’s right shoe when he removed the shoe. The packet contained heroin.
 
 [1]
 
 Deputy Borne testified that he
 
 *1102
 
 booked defendant with introduction of contraband into a correctional facility in connection with the heroin so found.
 

 Deputy Phelps testified she was on patrol just after midnight on December 4, 2008, when she received a report of a suspicious black man hanging around in front of the Brass Rail Lounge and flagging down passersby. Deputy Phelps pulled up in front of the lounge just after Deputy Borne. She secured defendant while Deputy Borne retrieved the red glove. Deputy Borne informed her they had a “966”, their signal for crack cocaine.
 

 Deputy Phelps began the pat-down frisk of defendant’s clothing as a safety measure and Deputy Borne completed the frisk. Deputy Borne asked defendant whether he had anything, and defendant replied that he had a syringe in his pocket. Deputy Borne then retrieved the syringe from defendant’s right pocket.
 

 | BPeputy Phelps testified that she then saw defendant hit Deputy Borne and flee on foot. At that point, the crack cocaine and the syringe were on the hood of Deputy Borne’s patrol car. Deputy Phelps secured the scene and radioed the sheriffs office headquarters regarding the chase.
 

 Defendant testified he is a convicted felon and a heroin user. He admitted that he possessed a syringe on the morning of December 4, 2008, but denied having cocaine or heroin.
 

 Defendant stated that he and Deputy Borne knew each other prior to the incident at the Brass Rail. The officer sometimes asked for his help in determining who the area drug dealers were. Deputy Phelps asked defendant what he had on him, and he told her he had a syringe. Defendant took the syringe out of his pocket and placed it on the police car. With regards to the red glove Deputy Borne picked up, defendant testified it was a woman’s mitten and it did not belong to him.
 

 Defendant admitted that he fled from the officers, but denied hitting Deputy Borne. He stated that he fell when he attempted to climb over a gate and Deputy Borne tasered him on his back. At that point, defendant claims that an officer other than Deputy Borne kicked him in the eye. An ambulance arrived at the scene and defendant was examined. He was then put in the back of a police car.
 

 Defendant also testified that when they arrived at booking, Deputy Borne told him he was going to put “all kind of charges” on him. Defendant stated he was not shown any heroin, and that he was not booked with possession of heroin.
 

 ASSIGNMENT OF ERROR
 

 In his only assignment of error, defendant contends the State did not put on sufficient evidence to prove he had possession of cocaine and heroin. He points to alleged inconsistencies between Deputy Borne’s testimony and the information | (-.contained in his police report, arguing the discrepancies were serious enough to raise a reasonable doubt as to his guilt. Additionally, he contends that the State failed to establish a chain of custody for the heroin allegedly discovered in his shoe. The State responds that the discrepancies of which defendant complains are matters of witness credibility that went to the weight of the evidence and not to its sufficiency. The State argues the evidence at trial was sufficient to prove defendant possessed cocaine and heroin.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunci
 
 *1103
 
 ated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, “assuming every fact to be proved that the evidence tends to prove.” LSA-R.S. 15:438;
 
 State v. Neal, supra.
 
 This statutory test is used with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Neal, supra,
 
 citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La. 1986).
 

 Constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt.
 
 State v. Spears,
 
 05-0964, p. 3 (La.4/4/06), 929 So.2d 1219, 1222, citing
 
 State v. Mussall,
 
 523 So.2d 1305, 1309 (La.1988). The fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to 17guarantee the fundamental protection of due process of law.
 
 Spears,
 
 05-0964 at 3, 929 So.2d at 1222-23.
 

 To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant was in possession of the illegal drug and that he knowingly possessed the drug.
 
 State v. Alo,
 
 04-62, p. 4 (La.App. 5 Cir. 10/12/04), 886 So.2d 1130, 1132,
 
 writ denied,
 
 04-2992 (La.3/24/05), 896 So.2d 1035. Guilty knowledge is an essential element of the crime of possession of contraband.
 
 Id.
 
 Since it is a state of mind, it need not be proven as fact; it may be inferred from the circumstances.
 
 State v. Major,
 
 03-3522, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803;
 
 State v. Lathers,
 
 03-941, p. 6 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 885.
 

 The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. A person not in physical possession of a drug is considered to be in constructive possession of the drug, even though it is not in his physical custody, when the drug is under that person’s dominion and control.
 
 Lathers,
 
 03-941 at 6, 868 So.2d at 885.
 

 Deputy Borne testified at trial that after he exited his patrol car in front of the Brass Rail, he saw defendant remove a red glove from his hand and discard it. Without losing sight of the glove, Deputy Borne walked over to where it lay and retrieved it. He immediately examined the glove and found crack cocaine inside of it. Deputy Phelps testified she did not see defendant drop the glove, but that Deputy Borne alerted her that he had seen defendant drop it. She saw Deputy Borne retrieve the glove, and she saw the crack cocaine Borne recovered from the glove. The testimony showed defendant had actual possession of the glove containing cocaine before he dropped it. The jury could have reasonably found that defendant had dominion and control over the cocaine when he dropped the 1 «glove, and that he thus had constructive possession of the cocaine in the glove when he discarded it.
 

 On cross-examination, defense counsel questioned Deputy Borne regarding his
 
 *1104
 
 police incident report.
 
 [2]
 
 Deputy Borne testified that he wrote a five page report the next day and described the incident. He testified that his report was accurate and included everything that was important, yet after looking at his report, he agreed that it contained nothing about finding the heroin, nor gave the name of the person who collected it. In another discrepancy, Deputy Borne testified at trial that he saw two black men in front of the Brass Rail when he arrived there, whereas the report only describes defendant. In his report, Deputy Borne wrote Deputy Phelps conducted the pat-down search of defendant, but testified that he conducted the pat-down search.
 
 [3]
 

 Defendant suggests that the cocaine recovered from the glove could have belonged to the second man, whom he identified as his friend, Pimp, and that Deputy Borne purposely left Pimp out of his report in order to impute guilt to him (defendant). But Deputy Borne testified that he saw defendant, and not the second man, drop the glove that contained the cocaine. Deputy Borne’s testimony, if believed, eliminated the possibility that someone other than defendant dropped the glove containing the cocaine. Deputy Borne was thoroughly cross-examined by defense counsel regarding the discrepancies between his direct testimony at trial and his police report, yet the jury clearly credited his testimony over that of defendant.
 

 Defendant points out that the State produced testimony about the red glove, but did not introduce the glove into evidence. This fact did not render the evidence [9of defendant’s cocaine possession insufficient. The State produced the crack cocaine at trial, and the officers both identified it as the cocaine that was removed from the glove. Introduction of the glove was unnecessary to proving the elements of possession of cocaine.
 

 Defendant complains the State failed to introduce film taken by Deputy Borne’s taser at the time he tasered defendant. Deputy Phelps testified that the model of taser she and Deputy Borne use is equipped with a camera. But there is nothing in the record to indicate that any film was taken at the time defendant was tasered. In any case, defendant does not show how this adversely affected either Deputy Borne’s credibility or the sufficiency of the State’s evidence in general.
 

 Defendant further complains that the State did not name the officer whom he claims kicked him in the eye. While defendant testified that an unknown officer kicked him in the eye after Deputy Borne tasered him, Deputy Borne testified that he did not believe an officer kicked defendant. Deputy Borne speculated that defendant injured his eye when he fell upon being tasered.
 

 With regard to the heroin charge, defendant contends the State failed to prove chain of custody as to the heroin evidence, and that police failed to book him with possession of heroin. Deputy Borne testified that, with respect to the heroin, he booked defendant with introduction of contraband into a penal institution under LSA-R.S. 14:402. Despite defendant’s complaint concerning the heroin charge, the district attorney acted within his authority under LSA-C.Cr.P. art. 61
 
 [4]
 
 when
 
 *1105
 
 he chose to charge defendant with possession of heroin, a different offense. As long as the State proved the elements of the charged offense of possession of heroin, it is of no consequence that the police arrested him for a different offense.
 

 | iqAs to the chain of custody question, Detective Borne testified he collected the packet of heroin immediately after it fell out of defendant’s shoe during the booking process. He identified State’s Exhibit 4 as the packet of heroin he recovered. The police report indicates that the heroin and the cocaine in this case were released to “CRIME TECH JP 1105.” The crime lab report indicates that Thomas Angelica, Jr., the forensic scientist, tested the off-white substance, and the result was positive for heroin. There was no evidence at trial as to who, if anyone, handled the evidence before and after it was at the crime lab. Nevertheless, once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than the admissibility.
 
 State v. Parks,
 
 07-655, pp. 18-19 (La.App. 5 Cir. 1/22/08), 977 So.2d 1015, 1028-29,
 
 writ denied,
 
 08-0495 (La.12/19/08), 996 So.2d 1126. Ultimately, a chain of custody is a factual matter for determination by the jury.
 
 Id.
 
 In this case, the State laid a proper foundation for the introduction of the heroin evidence. The sufficiency of the evidence regarding the chain of custody was thus a factual matter for the jury.
 

 Although defendant testified at trial that he never possessed the crack cocaine or the heroin, the jury clearly found the officers’ testimony more credible than that of defendant. It is not the function of an appellate court to assess credibility or reweigh the evidence.
 
 State v. Macon,
 
 06-0481, p. 8 (La.6/1/07), 957 So.2d 1280,1286. We find no merit to this assignment of error.
 

 ERRORS PATENT DISCUSSION
 

 The record was reviewed for errors patent. LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux, 31
 
 2 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals no errors patent in this case.
 

 |,,
 
 CONCLUSION
 

 We find no merit to the defendant’s assignment of error that there was insufficient evidence to support his convictions. Accordingly, defendant’s convictions are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . At the beginning of trial the parties agreed to stipulate that if the crime lab’s chemist were called as a witness, he would testify consistently with his report, that the sub
 
 *1102
 
 stances seized in connection with this case tested positive for cocaine and heroin. The Jefferson Parish Crime Laboratory Report was admitted as State’s Exhibit 5.
 

 [2]
 

 . The police report was admitted as Defense Exhibit 2 and State's Exhibit 10.
 

 [3]
 

 . Deputy Phelps testified that she began the pat-down search, and upon her asking, defendant advised her of the syringe in his pocket.
 

 [4]
 

 .LSA-C.Cr.P. art. 61 provides, "Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his
 
 *1105
 
 district, and determines whom, when, and how he shall prosecute.”